**In re FILENE'S BASEMENT, INC. and Filene's Basement Corp., Debtors.**

**Bankruptcy Nos. 99–16984–WCH, 99–16985–WCH.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 4, 1999.

---

MASS. GEN. LAWS ch. 208, § 34.

5.   131 B.R. 763, 766 (Bankr.D.Mass.1991).

Patrick P. Dinardo, Barbara D. Gilmore, Sullivan & Worcester LLP, Boston, MA, for T.A.C. Group, Inc.

Paul P. Daley, Mitchel Appelbaum, Hale and Dorr LLP, Boston, MA, for debtors.

Whitton E. Norris III, Gary S. Matsko, Davis, Malm & D'Agostine, PC, Boston, MA, for PricewaterhouseCoopers, LLP.

## DECISION ON MOTION TO RECONSIDER THE GRANTING OF MOTION TO EMPLOY PRICEWATERHOUSECOOPERS LLP

WILLIAM C. HILLMAN, Chief Judge.

### Introduction

On August 23, 1999, Filene's Basement, Inc. and Filene's Basement, Corp. (the "Debtors") filed voluntary chapter 11 petitions. Accompanying the petitions (which I subsequently ruled would be jointly administered) were applications to employ PricewaterhouseCoopers LLP ("PwC") as financial advisor and consultant which I allowed on August 24, 1999. On September 3, 1999, T.A.C. Group, Inc. ("T.A.C.") filed a motion for reconsideration of the appointment of PwC as Debtors' advisor and consultant (the "Motion"). T.A.C. alleges that PwC is not a disinterested person as required under the Bankruptcy Code resulting from its prior representation of T.A.C. At what may be loosely described as a preliminary hearing on the Motion, I directed PwC to respond in detail to the allegations by a date certain. I also scheduled a hearing at which I would receive such evidence as T.A.C. and PwC thought would assist me in my consideration of the Motion. I received the requested responses as well as memoranda and supporting affidavits. On September 29, 1999, I held a hearing and offered all parties in interest the opportunity to cross examine the affiants which they declined. No party brought further materials before me.

The allegations of the Motion, if substantiated, at least raise the question of whether, in granting the motion to employ, I committed "manifest errors of fact or law" or that there is newly discovered evidence which would lead me to reverse myself. *In re Mortgage Investors Corp.,* 136 B.R. 592 (Bankr.D.Mass.1992); *In re Wedgestone Financial,* 142 B.R. 7 (Bankr. D.Mass.1992). For the reasons stated below, I grant the Motion and vacate the

prior order appointing PwC as financial advisor and consultant to the Debtors and deny the application to employ.

### Factual Assertions

The Debtors' application to employ PwC (called "Advisor" in the application) stated in part:

> In May of 1999, Advisor was engaged to provide financial advisory and consulting services to the Debtors. Over that period Advisor has developed knowledge regarding the Debtor's operations, finances and systems.

Among the itemized services sought to be rendered were:

> r. Assistance to the Debtors' counsel in the preparation and evaluation of any potential litigation or claim objections;
> s. Testimony on various matters, as requested. . . .

Accompanying the Debtors' application to employ PwC was the signed statement of Martha E.M. Kopacz, a principal in the firm. Ms. Kopacz stated that:

> PricewaterhouseCoopers has no connection with the Debtors, creditors, other parties in interest, or their attorneys or accountants, except that PricewaterhouseCoopers may serve as a professional services provider in other matters, wholly unrelated to the Debtors or this case, in which attorneys or accountants of the Debtors, creditors or other parties in interest also serve as professional services provider. In addition, based upon my review of search results from the firm's relationship check system, PricewaterhouseCoopers has provided and/or may continue to provide, services for various entities shown on Exhibit A who are involved in the Debtors' case, which services are not related to the Debtors' case. Our assistance to these parties has been primarily related to auditing, tax and/or consulting services to those creditors or other interested parties.

T.A.C. does not appear on Exhibit A to Ms. Kopacz' statement. However, in a single page which follows that exhibit, listed as one of two additional disclosures, is the following paragraph:

> Coopers & Lybrand LLP, a predecessor firm to PricewaterhouseCoopers LLP, served as the Debtors' auditors for the fiscal years ended January 1989 through January 1996. In the spring of 1999, a PricewaterhouseCoopers LLP partner was retained by the plaintiff's law firm to potentially provide expert witness testimony in a litigation matter that involves the Debtors are defendants. When PricewaterhouseCoopers LLP was subsequently retained by the Debtor to provide financial advisory and consulting services, both parties to that litigation were notified. Information barriers were established immediately such that neither clients' interests relative to the other would be compromised. That litigation is now stayed as a result of the Debtors filing for Chapter 11 protection. As of today [August 23, 1999], the PricewaterhouseCoopers LLP partner has resigned from his representation of the plaintiff in that litigation.

Not mentioned in this paragraph is the identity of the plaintiff, the nature of the litigation, or any other fact which might have alerted me to a potential problem. It all appears to be *de minimus*.

In the Motion, T.A.C. does describe the litigation (the "State Court Action"). T.A.C. has sued the Debtors and James McGowan ("McGowan"), a former president of T.A.C. and present vice president of the Debtors, for misappropriation of T.A.C.'s trade secrets.

The contrasting statements of T.A.C. and PwC as to the relationship between them are best demonstrated by a paragraph-by-paragraph comparison.

### The Motion

2. In early April 1999, T.A.C. retained PWC as a consultant to T.A.C. and its counsel in the State Court Action again Debtor and McGowan. PWC's engagement is confirmed by an April 7, 1999

engagement letter from PWC, executed by Christopher Barry, a PWC partner, and countersigned by T.A.C.'s litigation counsel. In confirming its engagement, PWC promised in writing that "Any reports or work papers that we prepare in connection with this case—and any communications we have in connection with this case—will be regarded as attorney work-product, privileged and confidential and will be used only for this case. No other use, disclosure, or dissemination of them is to be made."

### PwC Response

2. PwC denies so much of the allegations of paragraph 2 of the Motion as allege that T.A.C. "Retained PwC",[1] but PwC admits the remaining allegations of paragraph 2 of the Motion.

\* \* \* \* \* \*

### The Motion

3. Pursuant to a confidentiality stipulation and protective order in the State Court Action, on May 18, 1999, counsel for T.A.C. wrote a letter to counsel for the Debtor and disclosed that T.A.C. had retained PWC as an expert. A copy of that letter is attached. . . .

### PwC Response

3. PwC admits the allegations of paragraph 3 of the Motion.

\* \* \* \* \* \*

### The Motion

4. Beginning in April 1999 and continuing through August 1999, PWC, through its director Diane Hamilton, in fact provided consulting services to T.A.C.'s counsel in the State Court Action on a number of issues dealing with the Debtor's and McGowan's liability. Ms. Hamilton is an expert in retailing and consults with numerous companies on new store concepts and other retailing ventures.

### PwC Response

4. PwC denies so much of the allegations of paragraph 4 of the Motion as allege that Diane Hamilton began providing consulting services to T.A.C. in April, 1999, but PwC admits the remaining allegations of paragraph 4 of the Motion. [In her affidavit, Hamilton admits attending a meeting with T.A.C. on March 23, 1999, but contends that she did not "commence[ ] active work on the TAC Engagement" until mid-July, 1999.]

\* \* \* \* \* \*

### The Motion

5. To best utilize Ms. Hamilton's services, and in reliance on PWC's promises of confidentiality, T.A.C. and its counsel shared with both Ms. Hamilton and Mr. Barry highly confidential business information belonging to T.A.C. and highly confidential matters of litigation strategy. It was important for T.A.C. to share this information with PWC so that PWC could fully appreciate the issues at stake in the State Court Action and provide meaningful judgment and expertise on which T.A.C. and its counsel could rely. For her part, among other things, Ms. Hamilton worked with T.A.C.'s counsel by analyzing issues and evidence in discovery, explaining their significance, and identifying information that T.A.C. should request in discovery that would help increase counsel's and Ms. Hamilton's understanding of the pertinent facts. In addition, Ms. Hamilton reviewed and evaluated certain of T.A.C.'s confidential documents and documents produced by McKinsey & Co., and advised T.A.C.'s counsel of their significance and how they relate to the issues to be tried. In the course of PWC's work on this case, T.A.C.'s counsel met face to face with Ms. Hamilton at length on two occasions, spoke with Ms. Hamilton by telephone on a number

---

1. But see the Kopacz statement quoted above where she states that a PwC partner "was retained by the plaintiff's law firm".

of occasions, and reviewed at least one memorandum prepared by Ms. Hamilton concerning issues in the case. T.A.C.'s counsel relied on Ms. Hamilton's and PWC's judgment and expertise by using it to help formulate T.A.C.'s discovery and litigation strategy, including determining what information to request and how to request it.....

### PwC Response

5. PwC denies the allegations contained in the first two sentences of paragraph 5 of the Motion and denies that, during the course of PwC's work on the case, T.A.C.'s counsel met face to face with Ms. Hamilton at length on two occasions. PwC is without sufficient knowledge or information to admit or deny the allegations contained in the last two sentences of paragraph 5 of the Motion. PwC admits the remaining allegations of the Motion.

\*   \*   \*   \*   \*   \*

### The Motion

6. On August 23, 1999, Mr. Barry from PWC telephoned T.A.C.'s litigation counsel and informed him that PWC would have to resign as consultants and experts to T.A.C. because PWC had accepted an engagement to serve as Filene's Basement's advisors in its Chapter 11, that the Chapter 11 engagement put PWC into a position of conflict, and that PWC would not bill T.A.C. for the time it had spent. Mr. Barry apologized for PWC's decision. Mr. Barry confirmed PWC's resignation in a letter, a copy of which is attached....

### PwC Response

6. PwC admits the allegations of paragraph 6 of the Motion.

\*   \*   \*   \*   \*   \*

### Discussion

■ The Bankruptcy Code allows a trustee to retain professionals, subject to court approval, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). As the Court of Appeals for the First Circuit has observed, the thrust of § 327 is to "ensur[e] that all professionals appointed pursuant to § 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein,* 19 F.3d 54, 57 (1st Cir.1994).

■ The Federal Rules of Bankruptcy Procedure require that an applicant file a verified statement disclosing "the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed.R.Bankr.P.2014(a) *passim.* "The purpose of the disclosure requirements is to provide the court with information necessary to determine whether the professional's employment meets the broad test of being in the best interests of the estate." *In re Lincoln North Assoc.,* 155 B.R. 804, 807 (Bankr.D.Mass.1993).

■ It has been held that the requirements of the rule transcend those of § 327(a), as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness. *In re Leslie Fay Cos.,* 175 B.R. 525, 536 (Bankr.S.D.N.Y.1994). "It is counsel's obligation to come forward with the information concerning his interests." *In re Guard Force Management, Inc.,* 185 B.R. 656, 661 (Bankr.D.Mass. 1995), *quoting In re Flying E Ranch Co.,* 81 B.R. 633 (Bankr.D.Colo.1988). Failure to be forthcoming with disclosure provides the bankruptcy court with an independent ground for disqualification. *Leslie Fay Cos.* at 533; *In re EWC, Inc.,* 138 B.R. 276, 281–82 (Bankr.W.D.Okla.1992). *See also Smith v. Marshall (In re Hot Tin Roof, Inc.),* 205 B.R. 1000, 1003 (1st Cir. BAP 1997) (stating professionals "cannot

**850**

pick and choose which connections are irrelevant. . . . ").

 In its Rule 2014(a) statement, quoted above, PwC does not reveal its connection with the State Court Action. Its failure to include T.A.C. in its list of clients and the inconspicuous and anonymous disclosure regarding that litigation fails to satisfy the requirements of the rule. Perhaps counsel for PwC failed to notice its admission of retention in the Kopacz statement or failed to appreciate that Kopacz was referring to the State Court Action. It is incomprehensible to me how PwC can deny retention in its response to the Motion and at the same time admit sufficient facts to constitute retention.

The egregious nature of its attitude is made clearer still in the opening paragraph of its memorandum in support of its opposition to the reconsideration motion when it asserts:

> Under applicable accounting standards and federal decisions, the pre-petition engagement by [T.A.C.] of [PwC] and the simultaneous engagement of PwC thereafter by [the Debtors] was entirely proper. Moreover, PwC fully and properly disclosed to this Court its prior engagements by both TAC and the [Debtors].

The first sentence misses the point entirely; the issue in the first instance is not the ethical correctness of PwC's multiple representations by the standards of any profession. The second is untrue. PwC did not bring any relationship *with T.A.C.* to my attention.

This is a case where disqualification on the basis of a false Rule 2014 statement alone is justified. *Leslie Fay Cos., supra.* I do not reach the issue of whether PwC is disinterested with the test of § 327.

### Conclusion

I find that PwC, by its own admissions of fact, has demonstrated its failure to comply with Fed.R.Bankr.P.2014(a). The motion for reconsideration is granted.

The prior order appointing PwC is vacated and the application to employ is denied. PwC shall return the retainer paid to the Debtors forthwith. It may file an application for reimbursement of actual and necessary expenses which it has incurred.