**In re MIDWAY INDUSTRIAL
CONTRACTORS, INC.,
Debtor.**

**No. 99 B 9175.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 11, 2001.

Walter E. Trittipo, Hough & Cook, Chicago, IL, for debtor.

William A. Brandt, Chicago, IL, trustee.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

This matter comes becomes before the Court on: (i) the Amended Application of Walter E. Trittipo for Compensation as Attorney for Debtor in Possession (the "Fee Petition"); and (ii) the Motion of Walter E. Trittipo for Approval and Allowance of Attorneys Fees as a Secured Claim (the "Motion for Allowance of Secured Claim"). For the following reasons, the Court awards fees in the amount of $18,500.00, with respect to the Fee Petition, which is approximately 56 percent of the amount requested and reimbursement of costs in the amount of $864.80. The Court denies the Motion for Allowance of Secured Claim.

## I. BACKGROUND

### The First and Second Chapter 11 Cases

Prior to commencing this bankruptcy case, Midway Industrial Contractors, Inc. ("Midway") filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "Code") numbered 92 B 13149 with this Court on June 11, 1992 (the "First Chapter 11 Case"). On June 25, 1992, the Court authorized Midway's employment of Walter E. Trittipo ("Trittipo") pursuant to Section 327 of the Code to act as Midway's counsel in the First Chapter 11 Case.

The Court entered an order on August 3, 1995, confirming the second amended plan of reorganization filed by Midway on January 4, 1995. The First Chapter 11 Case was closed on January 28, 1999.

On March 22, 1999 (the "Petition Date"), a little short of two months after the First Chapter 11 Case was closed, Midway filed a second voluntary petition for reorganization under chapter 11 of the Code, commencing the above-captioned case (the "Second Chapter 11 Case"). On August

31, 1999 (the "Conversion Date"), the Second Chapter 11 Case was converted to a case under chapter 7 of the Code. William A. Brandt, Jr. was appointed chapter 7 trustee and continues to serve in that capacity (the "Chapter 7 Trustee").

### Employment of Trittipo in the Second Chapter 11 Case

Midway filed an Application in the Second Chapter 11 Case to Engage Attorney under General Retainer pursuant to Section 327 of the Code on May 4, 1999, in order to employ Trittipo as its legal counsel (the "Employment Motion"). In the Employment Motion, Midway stated, to the best of its knowledge and that of its counsel, that Trittipo had no interest adverse to Midway or its estate.

In conjunction with and in support of the Employment Motion, Trittipo submitted an affidavit (the "Initial Rule 2014 Affidavit") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (hereinafter, "Bankruptcy Rules"). In the Initial Rule 2014 Affidavit, Trittipo disclosed that, as of the Petition Date, he had a claim against Midway for the balance owing for services he and his law firm rendered in the First Chapter 11 Case. According to the Initial Rule 2014 Affidavit, Trittipo had assigned his claim for these fees to his former law partner Mr. Cook, apparently in exchange for the former partner's release of claims against Trittipo. As a result, according to Trittipo,

> ... the arrangement ... for divesting himself and his firm of the legal right to the collection of his and Mr. Cooks prior attorney fees, coupled with the fact that no claim is made in the Chapter 11 petition, for attorney fees due for services rendered by Mr. Trittipo or his firm to Debtor after the date of the Plan of Reorganization in the prior Chapter 11 proceeding, any such claims for said

services being hereby expressly and completely waived and their (sic) being no existing business relationship whatsoever between Mr. Trittipo, or his law firm, and Mr. Cook, or his law firm, it is believed by Mr. Trittipo that, as a consequence of the foregoing assignment to Mr. Cook there will remain no adverse interest, as prohibited by section 362(sic) of the Bankruptcy Code, which otherwise would prohibit representation by Walter E. Trittipo of Debtor in its present proceeding.

Trittipo reported that he had no other connections with Midway, its creditors, or any other parties in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

The Court entered an order on June 24, 1999, authorizing the employment of Trittipo as counsel to Midway, with fees to be allowed upon notice and motion (the "Retention Order"). The Court also authorized Midway to transfer the sum of $26,500 to Trittipo as a general retainer. Trittipo alleges that he only received $18,500 of the retainer.

### The Sverdup Lawsuit

Before its demise, Midway operated as an industrial painting subcontractor, specializing in large commercial and governmental projects. From sometime in 1997 to January 1998, Midway served as a subcontractor to Sverdup Facilities, Inc. ("Sverdup") and Lindblad Construction Co. of Joliet, Inc. ("Lindblad") with respect to a construction project on property owned by Allied Tube and Conduit ("Allied") located in Harvey, Illinois.

Disputes arose among the parties and Midway was not paid when it completed its performance on the project. Consequently, Midway retained the services of Trittipo pursuant to a Retention Agreement

dated May 15, 1998 (the "Contingency Fee Agreement") to prosecute its claims against Sverdup, Lindblad and Allied. The Contingency Fee Agreement provided, *inter alia,* for compensation to Trittipo on a contingency fee basis in varying percentages based upon the timing of the resolution of Midway's claims.

Starting in May 1998, Trittipo negotiated on behalf of Midway with Sverdup, Lindblad and Allied. Trittipo eventually filed a complaint in August 1998, on Midway's behalf in the Circuit Court of Cook County, Illinois against Sverdup, Lindblad and Allied commencing the lawsuit captioned *Midway Industrial Contractors, Inc. v. Allied Tube & Conduit Co., et al.,* case number 98 CH 11003 (the "Sverdup Lawsuit").

In connection with the Sverdup Lawsuit, Trittipo allegedly served notices of an attorney's lien claim on Sverdup, Lindblad, Allied and National Fire Insurance Co. of Hartford ("National Fire")[1] on January 20, 1999, January 21, 1999, January 26, 1999 and January 27, 1999, respectively, purportedly pursuant to the provisions of the Illinois Attorney's Lien Act, 770 ILCS 5/1 (the "Attorney's Lien Claim").

In March 1999, after the closing of the First Chapter 11 Case and prior to the Petition Date in the Second Chapter 11 Case, Trittipo negotiated a settlement with Lindblad, whereby Lindblad agreed to pay the full amount of Midway's invoice of $18,524.80. Trittipo continued to represent Midway in the Sverdup Lawsuit after the Petition Date during the pendency of the Second Chapter 11 Case up to the Conversion Date.

Sverdup eventually settled after the Conversion Date with the Chapter 7 Trustee. The settlement provided for the payment by Sverdup of the sum of $65,000.00 to the estate. The Chapter 7 Trustee filed a motion to approve the settlements of various mechanics' lien claims, including those against Lindblad and Sverdup. The settlements were approved on February 14, 2000. The Chapter 7 Trustee received the settlement payments from Lindblad and Sverdup in the aggregate amount of $83,524.80, which are currently being held by the Chapter 7 Trustee pending resolution of this matter (the "Sverdup and Lindblad Settlement Funds").

### Trittipo's Failure to Disclose

The existence of the Contingency Fee Agreement, the Sverdup Lawsuit, and the Attorney's Lien Claim were not disclosed in the Employment Motion. Trittipo failed to disclose the Contingency Fee Agreement, the Sverdup Lawsuit and the Attorney's Lien Claim in the Initial Rule 2014 Affidavit. The first disclosure of these facts was made when Trittipo filed an Amended Rule 2014 Affidavit on November 15, 2000, approximately one year and five months after the entry of the Retention Order.

The Retention Order did not authorize Trittipo to render services in connection with the Sverdup Lawsuit on a contingent fee basis. Midway never brought a motion to retain Trittipo or any other attorney as special counsel to continue the prosecution of the Sverdup Lawsuit on behalf of Midway. Neither Midway nor the Chapter 7 Trustee sought to assume the Contingency Fee Agreement as an executory contract under Section 365 of the Code.

### Trittipo's Application for Allowance and Payment of Fees and Motion for Allowance and Payment of Secured Claim

Under consideration by the Court are the following matters:

---

1. The Court cannot discern from the pleadings how National Fire relates to the Sverdup Lawsuit. The relationship of National Fire, however, is irrelevant for purposes of this decision.

(i) the Motion of Trittipo to Allow Attorneys Fees as a Secured Claim and for Order Directing Payment, wherein Trittipo requests that the Court allow a secured claim in his favor in an unspecified amount pursuant to the terms of the Contingency Fee Agreement as a result of the settlements with Sverdup and Lindblad. Trittipo requests that the Chapter 7 Trustee be directed to pay the secured claim from the Sverdup and Lindblad Settlement Funds; and

(ii) the amended application of Trittipo to allow the sum of $33,077 in fees and reimburse $864.80 in expenses which he incurred in connection with representing Midway in the Second Chapter 11 Case and to allow the application of the retainer to those fees and costs.

The United States trustee and creditors George Gee and Marquette National Bank (collectively, the "Creditors") filed objections to the Fee Petition and the Motion for Allowance of Secured Claim. The United States trustee requests the Court treat the Fee Petition and the Motion for Allowance of Secured Claim as one request for allowance of professional compensation. The United States trustee recommends that Trittipo's compensation in the Second Chapter 11 Case be limited to the amount of the retainer Trittipo has already received, as a consequence of Trittipo's failure to make a timely disclosure of the fact that Trittipo had a claim for fees arising from the Contingency Fee Agreement. Moreover, the United States trustee argues that limiting the compensation to the retainer is justifiable in light of the lack of success of the Second Chapter 11 Case.

In their combined objection, the Creditors echoed the objections of the United States trustee, arguing that the lack of disclosure merits a denial of Trittipo's request for allowance of fees. The Creditors, however, urge the Court to deny all of the requested fees. These creditors also contend that Trittipo waived any lien rights he may have had by virtue of the Attorney's Lien Claim because of the failure to procure court approval of his employment to continue the prosecution of the Sverdup Lawsuit and because of Trittipo's failure to disclose the Attorney's Lien Claim in the Initial Rule 2014 Affidavit. Finally, the Creditors argue that if the Attorney's Lien Claim is valid, it is inferior to the secured claims held by the Creditors.

The Chapter 7 Trustee objects to the Fee Petition on procedural grounds, arguing that the Fee Petition should be denied because Trittipo failed to give the requisite 20 day notice of the hearing under Bankruptcy Rule 2002(a)(6). The Chapter 7 Trustee did not file an objection to the Motion for Allowance of Secured Claim.

## II. DISCUSSION

### The Fee Petition

██ Section 327 of the Bankruptcy Code allows the debtor-in-possession, with the court's approval, to employ one or more attorneys that do not hold or represent an interest adverse to the estate and that are not disinterested persons. 11 U.S.C. § 327. A professional with an adverse interest or who is not disinterested cannot be employed by the debtor-in-possession. *In re Spanjer Bros., Inc.*, 191 B.R. 738, 753 (Bankr.N.D.Ill.1996) (citing *In re Tinley Plaza Associates, L.P.*, 142 B.R. 272, 276–77 (Bankr.N.D.Ill.1992) and *In re Envirodyne Industries, Inc.*, 150 B.R. 1008, 1016–17 (Bankr.N.D.Ill.1993)).

██ A "disinterested person" is defined in relevant part as a person that: "(A) is not a creditor, an equity security holder, or an insider; ... and (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by

reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(14). Adverse interests are not defined in the Code, but are generally considered to be "... any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or; ... a predisposition under circumstances that render such a bias against the estate." *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998) (citing *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985)). The requirements that a professional be disinterested and have no adverse interest:

'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'

*Id.* at 836 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994)).

▮ Bankruptcy Rule 2014 governs the procedures with respect to the application for employment under Section 327 of the Code. The application for employment must state, among other things: the specific facts showing the necessity of the employment; the reasons for the selection of the proposed professional; the professional services to be rendered; and, to the best of the applicant's knowledge, all of the proposed professional's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any persons employed in the office of the United States trustee. Fed.R.Bank.P. 2014. In addition, the person to be employed must file a verified statement (the "Rule 2014 Affidavit") setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *Id.*

▮ The disclosure in the Rule 2014 Affidavit must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest. *See In re Granite Partners, L.P.*, 219 B.R. 22, 34 (Bankr.S.D.N.Y.1998). Persons to be employed "must disclose all facts that bear on ... disinterestedness, and cannot usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away." *Id.* at 35 (internal citations omitted). Disqualification is justified for lack of adequate disclosure in the Rule 2014 Affidavit, even if it turns out that the professional is in fact disinterested. *In re Filene's Basement, Inc.*, 239 B.R. 845, 848 (Bankr.D.Mass. 1999).

▮ The disclosures must be explicit and complete. "Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient". *In re Saturley*, 131 B.R. 509, 517 (Bankr.D.Me.1991).

▮ Full disclosure serves a crucial role in the professional being paid. *Crivello*, 134 F.3d at 836 ("... counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation"). Under Section 330 of the Code, the court may award reasonable compensation for actual and necessary services rendered by a professional person employed by the estate under Section 327 of the Code. 11 U.S.C. § 330. In order to be paid by the estate

the professional's employment must have been approved by the court. *In re Milwaukee Engraving Co. Inc.,* 219 F.3d 635, 637 (7th Cir.2000), *cert. denied Maier, McIlnay & Kerkman, Ltd. v. Bodenstein,* 531 U.S. 1112, 121 S.Ct. 856, 148 L.Ed.2d 770 (2001). *See also In re Monument Auto Detail, Inc.,* 226 B.R. 219, 224 (9th Cir. BAP 1998) (quoting *In re Weibel, Inc.,* 176 B.R. 209, 211 (9th Cir. BAP 1994)("[c]ourt approval of employment .... is the sine quo non to counsel getting paid.")). The amount of compensation must be reasonable after a review of the factors set forth in Section 330 of the Code, which includes a consideration of the nature, extent and value of the services. 11 U.S.C. § 330(a)(3).

If counsel has been employed and the court subsequently learns that during counsel's employment he was not disinterested or held an adverse interest, the court can revoke the order of employment and deny compensation. 11 U.S.C. § 328(c). Under these circumstances, the professional is said to have been "erroneously employed". *Crivello,* 134 F.3d at 837.

Denial of fees under Section 328(c) of the Code serves three purposes: (1) punishment of the transgressor; (2) deterrence of future violations; and (3) preservation of public confidence in the integrity of the bankruptcy process. *Granite Partners,* 219 B.R. at 41 (citations omitted).

The Seventh Circuit allows the court discretion in deciding whether and in what amount to deny fees under Section 328(c) of the Code. *Crivello,* 134 F.3d at 837–38. *See also Milwaukee Engraving,* 219 F.3d at 638–39.

Bankruptcy judges are given wide latitude in deciding whether a denial of the fees of an "erroneously employed" professional in whole or in part is appropriate. *Crivello,* 134 F.3d at 839. The bankruptcy judge, "[b]eing on the front line ... is 'in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails'". *Id.* (quoting *In re Martin,* 817 F.2d 175, 182 (1st Cir. 1987)).

The first factor the bankruptcy court should consider before it elects to disallow a portion of the requested fees is whether any evidence exists to support an inference of intentional non-disclosure. *Id.* If there is evidence in support of such an inference, the court "should not fall prey to the professional's story of confusion, miscommunication or negligence". *Id.* The punishment for intentional non-disclosure should be treated by the bankruptcy court as severely as a fraud upon the court. *Id.* Under these circumstances, this Court would not hesitate to order the denial of all compensation.

Absent any allegations of intentional concealment, the court should consider other factors. Judge Ginsberg provides guidance in this regard:

> In exercising that discretion, the court needs to balance the draconian impact of the loss of fees for services actually rendered by a professional ... and the denial of reimbursement of expenses actually incurred and paid by [the professional] in his representation of the debtor against the actual injury or prejudice to the estate from his failure to live up to the requirements of § 328(c). 2 *Collier on Bankruptcy,* ¶ 328.04[2] at 328–16 (15th ed.1990). Also relevant is the question of whether the lawyer made full disclosure to the court of problems which might exist in meeting the requirements of § 328(c). *Al Gelato,* 99 B.R. 404.

*Diamond Mortgage,* 135 B.R. at 96.

On the Petition Date, Trittipo was a creditor of Midway with a claim

arising from rendering services on behalf of Midway with respect to the Sverdup Lawsuit. Furthermore, Trittipo asserts that this claim had secured status. Accordingly, at the time of the entry of the Retention Order, Trittipo was not disinterested because he: (i) was a creditor of the estate; and (ii) he held an interest adverse to the group of unsecured creditors and other secured creditors by virtue of the Attorney's Lien Claim. In addition, the Attorney's Lien Claim gave Trittipo an economic interest that lessens the value of the estate by diminishing the amount of the Sverdup and Lindblad Settlement Funds available to other creditors. The possession of the Attorney's Lien Claim raised the potential for a dispute with the estate, which has been actualized by these proceedings. As such, at the time of the Retention Order, Trittipo had an adverse interest.

The Court became aware of Trittipo's lack of disinterestedness and the fact that he held an adverse interest after the approval of his employment. As a result, the Court will now exercise its discretion under Section 328(c) of the Code to determine whether and in what amount to deny Trittipo's fees. No one has alleged that Trittipo intentionally concealed the Attorney's Lien Claim. Accordingly, the Court will not order the complete disallowance of all fees.

 Trittipo makes numerous arguments to support his request for complete allowance of his fees. First, Trittipo alleges that he in fact made the required disclosure and therefore, a denial of his fees is unwarranted. Specifically, Trittipo points out that the Sverdup Lawsuit was disclosed in Midway's Statement of Financial Affairs and that he stated in the Initial Rule 2014 Affidavit that he was generally familiar with the legal matters of Midway. This argument is unpersuasive. Trittipo

would put the onus on the Court to investigate the veracity of the Initial Rule 2014 Affidavit by combing the record for other documents, when the burden was on him to submit a comprehensive and accurate Rule 2014 Affidavit. As the Seventh Circuit points out with respect to Disclosures of Compensation required under Bankruptcy Rule 2016, "[b]ankruptcy courts have neither the resources nor the time to investigate the veracity of the information submitted in 2016(b) statements and affidavits and to root out the existence of undisclosed conflicts of interest". *Crivello,* 134 F.3d at 839. The Court should not have to "rummage through files" to determine if counsel has satisfied his obligations of disclosure. *In re Rusty Jones,* 134 B.R. 321, 345 (Bankr.N.D.Ill.1991).

 Trittipo argues that the lack of disclosure has not caused any prejudice to the estate in general. This argument ignores the objective of requiring disclosure. The objective of requiring disclosure is not so much to protect against prejudice to the estate, but to ensure undivided loyalty and untainted advice from professionals. *Crivello,* 134 F.3d at 836. That is why lack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice. *Filene's Basement,* 239 B.R. at 849. Trittipo's lack of prejudice argument is relevant, however, in assessing the amount of disallowance, which is discussed below. *See Diamond Mortgage,* 135 B.R. at 96.

 Trittipo next contends that the employment arrangement would have been approved had the disclosure been made. Such an argument is speculative and irrelevant. *Monument Auto,* 226 B.R. at 226. The Court will indulge in some speculation, however, solely for the future reference of proposed professionals. Had the Court been made aware of the Attorney's Lien Claim at the time of the Employment Mo-

tion, it would not have authorized Trittipo's employment, absent a waiver of the claim. *See In re Automend, Inc.,* 85 B.R. 173, 176 (Bankr.N.D.Ga.1988) (an attorney who is a prepetition creditor with a lien securing payment of fees is not disinterested and is therefore disqualified from employment by the debtor).

Finally, Trittipo blames his failure to disclose on lack of a full understanding of his disclosure obligations under the Code and Bankruptcy Rules. While the Court is sympathetic that members of the bar must navigate the various requirements and intricacies of the numerous provisions of the Code and Rules, lack of knowledge cannot serve as an excuse. Rather, a "law firm is chargeable with the knowledge of the law". *In re Glenn Electric Sales Corp.,* 99 B.R. 596, 599 n. 2 (D.N.J.1988). This is particularly true here where Trittipo had practiced for seven years before the Court. Moreover, Trittipo admits that he waived his claims for fees owing from the First Chapter 11 Case to avoid being precluded from employment. This acknowledgment by Trittipo directly contradicts his claim of ignorance.

None of Trittipo's arguments persuade this Court to refrain from disallowing at least some portion of the requested fees. Trittipo states in the Fee Petition that he performed 169.60 hours of services for Midway at a rate of $195 per hour, which total $33,077.00 in fees. After a detailed review of the Fee Petition, the Court finds that Trittipo rendered $30,600.05 of reasonable services on behalf of Midway ($33,077.00 less $1,228.50 rendered in connection with retention matters, which as discussed herein, were mishandled by Trittipo and $1,248.00 rendered on the Sverdup Lawsuit). The fact that Trittipo rendered reasonable services and the argument that Trittipo's services were a factor in the generation of the Sverdup and Lindblad Settlement Funds weigh in favor of a partial allowance.

On the other hand, the lack of disclosure did result in some prejudice to the estate. The estate has now been burdened by the expense of responding to Trittipo's assertion of the Attorney's Lien Claim and objecting to the Fee Petition. In light of this prejudice, the exceedingly long time it took for a disclosure to finally be made, and in consideration of the need to ensure compliance by professionals with the Bankruptcy Code and Rules, the Court agrees with the United States trustee that it is appropriate to limit the fee allowance to an amount equal to the retainer which Trittipo claims he received, $18,500.00. This amount constitutes a 44% reduction of the fees requested. This percentage reduction comports with other decisions in this district wherein the court partially disallowed fees for non-disclosure. *Diamond Mortgage,* 135 B.R. at 101 (sixty percent reduction in fees for failure to disclose that attorney was pre-petition creditor); *In re Al Gelato Continental Desserts, Inc.,* 99 B.R. 404, 408 (Bankr.N.D.Ill.1989) (ten percent reduction in fees for failure to disclose adverse interest); *Rusty Jones,* 134 B.R. at 342 (sixty percent reduction in fees for failing to disclose significant personal and business relationship with the principals of the debtor); *In re Begun,* 162 B.R. 168 (Bankr.N.D.Ill.1993) (fifty percent reduction for failure to timely and fully comply with Bankruptcy Rule 2014).

It is unfair to reduce the reimbursement of the costs incurred by Trittipo. *Diamond Mortgage,* 135 B.R. at 101. The costs totaling $864.80 consist of the $830.00 filing fee and a charge of $34.80 for purchasing bankruptcy forms. Both of these costs are reimbursable.

Accordingly, Trittipo is awarded $18,500.00 in fees and $864.80 in costs

(collectively, the "Allowed Fees and Costs"). As stated above, the Retention Order allowed the payment of a $26,500 retainer to Trittipo, but Trittipo claims he only received $18,500 of the retainer. There appears to be an open question as to whether the parties agree with Trittipo's statement that he did not receive the full retainer. Accordingly, Trittipo is given leave to apply $18,500.00 of the retainer to the Allowed fees and Costs. Any amount of the Allowed Fees and Costs not satisfied after application of $18,500.00 of the retainer shall have administrative expense status under Section 503(b)(2) of the Code. The Court orders the disgorgement of any amount of the retainer remaining in Trittipo's possession after application of $18,500.00 to the Allowed Fees and Costs, and Trittipo is directed to deliver said remaining amount to the Chapter 7 Trustee.

■ Finally, as the United States trustee points out, it is appropriate to reduce fees on the basis of an unsuccessful chapter 11 case. *See In re Wire Cloth Products, Inc.,* 130 B.R. 798, 807 (Bankr. N.D.Ill.1991). Given the 44% disallowance of fees already, the Court does not believe that the failure of the chapter 11 case warrants a further reduction in fees.

### Motion for Allowance of Secured Claim

■ Actions to determine the extent, validity and priority of liens are considered adversary proceedings. Fed. R.Bank.P. 7001(2). The Motion for Allowance of Secured Claim requests a determination of the validity of the Attorney's Lien Claim, a request which is typically brought as an adversary proceeding. The fact that the request was brought as a motion instead of as an adversary proceeding does not present a jurisdictional defect:

> Although Bankruptcy Rule 7001 requires an adversary proceeding to be commenced in order to determine the validity, priority, or extent of a lien, there is authority which holds that failure to commence an adversary is not a jurisdictional defect and may be waived. *In re Robinson,* 217 B.R. 527, 530 (Bankr.E.D.Tex.1998) (citing *In re Lawler,* 106 B.R. 943, 957 (N.D.Tex. 1989)). These authorities have reasoned 'where the rights of the parties have been adequately presented no prejudice results from consideration of the issues on the merits.' *Id.*

*In re Enfolinc, Inc.,* 233 B.R. 351, 354 (Bankr.E.D.Va.1999). *See also In re Zolner,* 249 B.R. 287, 288 (N.D.Ill.2000), *aff'd In re Zolner,* 249 B.R. 287 (N.D.Ill.2000).

No one but the Court has raised the issue that this matter should have been brought as an adversary complaint. Trittipo has been given ample opportunity to present his case and he has not made an argument to the contrary. Additionally, the Creditors and the United States trustee did not object to the procedural posture of the Motion for Allowance of Secured Claim. Accordingly, the Court will analyze the merits of the request.

■ State law determines the nature of an interest in property. *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L.Ed.2d 13 (2000). "Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides." *Id.* (citations omitted).

Trittipo is seeking to enforce a lien claim he possessed at the Petition Date. The Creditors and the United States trustee have raised the issue of whether the professional employment and disclosure requirements of the Bankruptcy Code trump

the prepetition state law lien rights held by Trittipo. In other words, does the fact that Trittipo violated a Code and Bankruptcy Rule disclosure requirement result in an extinguishment or work as a waiver of his purported prepetition lien? The parties do not cite to a Code or Bankruptcy Rule provision or other authority answering this query in the affirmative.

The Code certainly gives the bankruptcy court discretion in determining the reasonableness of counsel's fees. Under Section 329, the court is empowered to review the reasonableness of compensation agreements made within one year before the petition date, but Section 329 says nothing about avoiding an attorney's lien. The Code provides mechanisms for avoidance of liens, *e.g.*, Section 522(f) (avoidance of liens impairing exemptions), Section 544 (avoidance of liens through the exercise of a trustee's strong-arm powers), Section 545 (avoidance of statutory liens), and Section 547 (avoidance of preferential liens), but these statutory grounds are either inapplicable in this case or were not asserted here.

A review of case law is illuminating, but not dispositive. In *In re Albert*, 206 B.R. 636 (Bankr.D.Mass.1997), an attorney retained by the chapter 7 debtor in a state court lawsuit, which was commenced prepetition, but was settled postpetition, brought a motion to enforce his attorney's lien against the settlement proceeds. Prior to the petition date, the attorney and the debtor entered into a retention agreement providing for a contingent fee. The attorney did not become aware of the filing of the bankruptcy case until some weeks after the chapter 7 case was filed. The chapter 7 trustee decided not to continue to employ the attorney on behalf of the estate and did not assume the retention agreement. The chapter 7 trustee did not contest the existence of the attorney's lien

as of the petition date at the hearing on the motion to enforce the lien.

The court found that under Massachusetts law, the attorney had a valid attorney's lien, which related back to the commencement of the attorney's services. As such, the lien was shielded from avoidance under Section 546(b) of the Code. *Id.* at 639–40.

The court examined the extent of the attorney's lien and held that the lien could only secure fees for prepetition services. *Id.* at 640. Further, the bankruptcy court has the authority to review the reasonableness of the fees secured by the lien. *Id.* If the fees arise from a contingency fee agreement and the agreement was not assumed postpetition, the contingency fee agreement "cannot serve as a measure of compensation" and the reasonableness standard applies. *Id.* (citing *In re Leiden Corp.*, 59 B.R. 239 (Bankr.D.R.I.1986)). Compensation for postpetition services is available only to professionals who are employed with the court's authorization. *Id.* at 642. In the end, the court ruled that the attorney held a valid attorney's lien in the settlement proceeds that secured the amount of reasonable services rendered prior to the petition date. The court authorized the retroactive employment of the attorney to cover the period of time he did not know of the bankruptcy case. The court denied any fees for services rendered after the attorney became aware of the bankruptcy case.

The conclusion of *Albert* is that the lien survives but its extent is determined by bankruptcy reasonableness standards, unless the underlying agreement is assumed. In addition, the lien does not extend to unauthorized postpetition services. The conclusion in *Albert* concerning the survival of the lien was reached because the trustee did not contest its validity. The *Albert* decision does not indicate whether

the court considered its authority *vel non* to avoid the lien for the attorney's failure to comply with Code employment provisions.

In the *Monument Auto* case, 226 B.R. 219, a law firm whose employment on behalf of the chapter 11 debtor-in-possession was not authorized, sought to have fees it incurred in the postpetition period allowed after the conversion of the case to chapter 7. The court held that the lack of employment authorization was fatal to the ability of the firm to recover any postpetition fees. The Court also held that "the [f]irm's possession of an attorney's lien did not obviate its obligation to satisfy the employment and compensation requirements of the Code and Rules". *Id.* at 225. The court did not rule on the validity of the attorney's lien since it was unnecessary to do so given the fact that all fees were disallowed. Even if the lien were valid, it secured nothing.

Trittipo is not seeking a determination that the fees purportedly secured by the Attorney's Lien Claim were reasonable. The sole issue before the Court is the validity of the Attorney's Lien Claim.

Neither the *Albert* or *Monument Auto* decisions directly addresses the issue presented here—can Trittipo's lien be extinguished or avoided by virtue of his noncompliance with the Code and Rule disclosure requirements? As in *Monument Auto,* however the Court need not address this issue, because as discussed below, Trittipo does not have a valid statutory or equitable attorney's lien under Illinois law. Given the clear directive from the Supreme Court that a bankruptcy court is not to interfere with creditor entitlements without express statutory authority, the Court is disinclined to rule on this issue unless it is dispositive of the case. It is not.

### *Trittipo Waived the Attorney's Lien Claim*

 There is an argument, which no one raised, that Trittipo voluntarily waived the Attorney's Lien Claim. Rights arising from statutes may be waived as long as the waiver is knowing, voluntary, and intentional. *Department of Public Aid ex rel. Allen v. Dixson,* 323 Ill.App.3d 600, 752 N.E.2d 1147, 256 Ill.Dec. 905 (3rd Dist.2001). In the Initial Rule 2014 Affidavit, Trittipo stated that no claim was made for ". . . attorney fees due for services rendered by Mr. Trittipo or his firm to Debtor after the date of the Plan of Reorganization in the prior Chapter 11 proceeding, any such claims for said services being hereby expressly and completely waived . . .". Trittipo knew of his rights to assert an attorney's lien, as evidenced by his assertion of one. The services he rendered under the Contingency Fee Agreement took place after the date of the Plan of Reorganization in the First Chapter 11 Case, so they fall within the time period of the waiver in the Initial Rule 2014 Affidavit. Finally, Trittipo made and submitted the Initial Rule 2014 Affidavit voluntarily and intentionally. Accordingly, Trittipo waived the Attorney's Lien Claim.

### *The Validity of the Attorney's Lien Claim*

Assuming *arguendo* that Trittipo did not waive the Attorney's Lien Claim, he still has not proven its validity. In Illinois, the creation and perfection of an attorney's lien is governed by the Illinois Attorney's Lien Act. 770 ILCS 5/1. The statute provides in pertinent part:

> Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collec-

tion, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action.

770 ILCS 5/1 (2001).

 There must be strict compliance with the statute in order to create an effective attorney's lien. *In re Del Grosso,* 111 B.R. 178, 182 (Bankr.N.D.Ill.1990) (citations omitted). The following steps must be taken under the statute: "(1) the attorney must have been hired by a client to assert a claim; (2) the attorney must perfect the lien by serving notice in writing; and (3) the notice must be served on the party against whom the client has a claim". *Id.* The notice must be served during the existence of the attorney-client relationship. *Id.*

The notice of the lien required under the statute must be writing. The written notice must contain language claiming the lien and stating the interest the attorney has in the claim. 770 ILCS 5/1. The written notice must be served on the parties against whom the client has a claim. *Id.* "Service on a party's attorney is insufficient to perfect the statutory lien." *Del Grosso,* 111 B.R. at 182.

 Trittipo appended copies of the Contingency Fee Agreement to the Motion to Allow Secured Claim evidencing that Trittipo was hired to represent Midway to prosecute the Sverdup Lawsuit. Although Trittipo appended copies of return receipts appearing to indicate service by certified mail on Sverdup, Allied and National Fire, he did not include the written notice of the Attorney's Lien Claim. There is no way for the Court to determine whether the appropriate notice was indeed sent, or, if it was sent, whether the content of the notice satisfied the statutory requirements. Therefore, the burden of establishing a valid lien under the Attorney's Lien Act is not met. *See In re Crisp,* 92 B.R. 885, 891 (Bankr.W.D.Mo.1988) (attorney's lien arising under contingency fee agreement not allowed due to lack of proof showing transmittal of notice required under Missouri law).

### The Equitable Lien in the Sverdup and Lindblad Settlement Funds

 Trittipo alternatively argues that he is entitled to an equitable lien in the Sverdup and Lindblad Settlement Funds. According to the Seventh Circuit,

[i]n Illinois, an equitable lien arises in two situations, the first of which occurs where the parties express in writing their intention to make a particular property, real or personal, or some fund the security for a debt, or where there has been a promise to convey or assign the property as security. The essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which the obligation fastens.

*In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir.1986) (internal citations omitted).

 Whether an equitable lien arises from a contingency fee agreement depends upon the precise language of the agreement. *Id.* at 576. The language must be more than a promise by the client

670

to pay the attorney's fees in an amount equal to a specified portion of the recovered fund. *Id.* Rather, the language must indicate that the fees are to be paid out of a specific fund, thereby giving rise to an actual assignment of a portion of the fund. *Id.*

In *Brass Kettle*, the Seventh Circuit found an equitable lien from the language "Forty Percent (45%) of any recovery made". *Id.* Another agreement providing for "an amount equal to 25% of the increase obtained from the condemning body over the amount of $132,200.00" did not give rise to an equitable lien, because the language did not indicate that the attorney would have rights in the recovered funds. *Achs v. Maddox*, 175 Ill.App.3d 989, 993, 530 N.E.2d 612, 614, 125 Ill.Dec. 454 (2nd Dist.1988), *appeal denied Achs v. Maddox*,

125 Ill.2d 563, 537 N.E.2d 807, 130 Ill.Dec. 478 (1989).

■ The Contingency Fee Agreement at issue here, provides in relevant part:

This agreement includes the following fee schedule that will apply for your representation of MIDWAY in the matter before the Circuit Court of Cook County Illinois. Since MIDWAY continues to experience difficult cash flow problems and currently does not have the funds to pay you for handling our continual Chapter–11 proceedings, I agree on MIDWAY's behalf to a contingent fee which will depend solely on the level of work which your firm will perform in order to settle this action. The fee schedule in which MIDWAY agrees to is as follows:

| | Action | Fee Structure |
|---|---|---|
| 1. | Settlement prior to law suit being filed | 25% Recovered Amount |
| 2. | Settlement after filing suit, but before commencement of discovery. | 33–1/3% Recovered Amount |
| 3. | Settlement after commencement of discovery, but before pre-trial preparation | 40% Recovered Amount |
| 4. | Settlement after pre-trial preparation, but before trial. | 45% Recovered Amount |
| 5. | Settlement after trial commencement or upon judgment | 50% Recovered Amount |

The above language indicates that Trittipo did not have rights in the "Recovered Amount". The percentage amounts are referred to as a "fee schedule" and are under the heading "Fee Structure", leading the Court to find that Midway merely promised to pay the percentage amount but did not assign the fund. Therefore, Trittipo has not satisfied the requirements to obtain an equitable lien on the Sverdup and Lindbad Settlement Funds.

Contrary to Trittipo's assertion, the language in the Contingency Fee Agreement is not "virtually identical" to the language in the agreement in the case of *Lewsader v. Wal–Mart Stores, Inc.*, 296 Ill.App.3d

169, 694 N.E.2d 191, 230 Ill.Dec. 560 (4th Dist.1998). In *Lewsader*, the agreed upon compensation was "33–1/3% of any amount recovered by settlement". *Id.* at 198. Based on this language, the court found an equitable lien.

Granted, the language in the *Lewsader* agreement is close to the Contingency Fee Agreement, but the addition of the word "of" in the *Lewsader* agreement works to attach the settlement fund with the lien. The words "of" or "from" are missing from the Contingency Fee Agreement. Careful consideration of the exact words is needed when the standard is precision.

Finally, because Trittipo does not have a valid lien, the Court need not address the issue raised by the Creditors as to the relative priorities of their security interests. The Court also finds that the seven-day notice period of the hearing on the Fee Petition is sufficient in light of the fact that this matter was continued from time to time giving adequate opportunity for the parties to raise their arguments. Accordingly, any further notice is waived.

**CONCLUSION**

For the reasons set forth above, the Court awards Walter E. Trittipo fees in the amount of $18,500.00 and allows reimbursement of costs in the amount of $864.80 (the "Allowed Fees and Costs"). Trittipo is given leave to apply $18,500.00 of the retainer to the Allowed Fees and Costs. Any amount of the Allowed Fees and Costs not satisfied after application of $18,500.00 of the retainer shall have administrative expense status under Section 503(b)(2) of the Code. The Court orders the disgorgement of any amount of the retainer remaining in Trittipo's possession after application of $18,500.00 to the Allowed Fees and Costs, and Trittipo is directed to deliver said remaining amount to the Chapter 7 Trustee. The Court denies the Motion of Trittipo for Allowance of Secured Claim.