### In re MONUMENT AUTO DETAIL, INC., Debtor.

### SHAPIRO BUCHMAN LLP, Appellant,

### v.

### GORE BROTHERS; United States Trustee; Tevis T. Thompson, Chapter 7 Trustee; Alexandre Tchick; Cherie Tchick; and Monument Auto Detail, Inc.; Appellees.

BAP No. NC–98–1268–RRYJU.
Bankruptcy No. 97–49353–TT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 25, 1998.

Decided Oct. 6, 1998.

Basil J. Boutris, Shapiro Buchman LLP, Walnut Creek, CA, for Shapiro Buchman LLP.

Cynthia L. Cox, Kornfield, Paul & Bupp, P.C., Oakland, CA, for Tevis T. Thompson, Jr., Trustee.

Before: RUSSELL, RYAN, and JURY,[1] Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The debtor's counsel appeals the bankruptcy court's order denying attorneys' fees and costs incurred during the chapter 11[2] phase of the bankruptcy case, disallowing a portion of the fees and costs incurred post-conversion, and ordering disgorgement of the majority of its retainer to the chapter 7 trustee. We AFFIRM.

## I. FACTS

Monument Auto Detail, Inc. ("Monument") filed a voluntary chapter 11 petition on September 24, 1997. The law firm of appellant Shapiro Buchman LLP (the "Firm") signed the petition as counsel for the debtor in possession. Monument filed its schedules and statement of financial affairs on October 7, 1997.

On November 18, 1997, the Firm filed an application for employment as Monument's counsel, which was served on all creditors and the Office of the United States Trustee ("UST"). The application was not set for hearing and did not contain any explanation for the approximate one and one-half month delay in applying for approval of the Firm's retention.

The application and related declaration of attorney Robert R. Neller stated that the Firm had represented Monument regarding insolvency matters prior to filing the petition and advised Monument regarding the commencement of the bankruptcy case; that the Firm did not represent any creditor or other party in the chapter 11 case or have any adverse interest to the debtor or the estate; and that the Firm had received a $20,000 retainer from Monument prior to the commencement of the case. The exhibits attached to the application included a copy of the Firm's retainer agreement with Monument, which provided, *inter alia*, as follows:

> 10. **Lien.** You hereby grant us a lien for attorney's fees and costs advanced on all claims and causes of action that are the subject of our representation under this agreement and on all proceeds of any recovery obtained, whether by settlement, arbitration award, or court judgment.

The court denied the Firm's proposed employment order without prejudice, issued an Order to Show Cause Re: No Retention Order, and set the matter for hearing on December 15, 1997.

The Firm filed an opposition to the show cause order, contending, *inter alia*, that the filing of the employment application was delayed due to "initial organizational matters" for Monument's emergency bankruptcy filing. The opposition explained that those matters were complicated by the filing of an *ex parte* motion for relief from the automatic stay by Monument's landlord and major creditor, Bill and Betty Gore dba Gore Brothers ("Gore"), only eight days after the petition was filed, and by the preliminary and final evidentiary hearings on Gore's motion which were held shortly thereafter.[3]

At the commencement of the show cause hearing on December 15, 1997, the court

---

1. Hon. Meredith A. Jury, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code,

11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

3. The court granted the motion for relief from the stay at the final evidentiary hearing on November 7, 1997.

explained that it had not signed the proposed employment order due to its concern that the language in the retainer letter and proposed order indicated that the Firm was either unaware of, or seeking to modify, the bankruptcy rules requiring application for approval of fees before receipt of payment. Attorney Neller agreed to submit a modified order.

Gore's counsel then objected to the Firm's employment on grounds of disinterestedness and nondisclosure, which was allegedly demonstrated by discrepancies between the schedules and declarations filed in the case. For example, the schedules reflected a $5,000 retainer for state court litigation that was not described in the employment application. Gore's counsel claimed that the Firm had in fact been paid more than $10,000 within three to four months before bankruptcy for matters that did not appear to be included in the $20,000 retainer. He also claimed that an additional $19,000, which was being held in trust as rent money for Gore, had been transferred to the Firm and was not accounted for in the schedules or employment application.

Mr. Neller responded that the Firm had represented and received payments from Monument's principals at various times, and had also received payment from Monument for prepetition services. The court ordered the Firm to file an itemization of the services performed and payments received during the six month period prior to the bankruptcy filing, and continued the show cause hearing to January 5, 1998.

Robert W. Shapiro filed a supplemental declaration on December 23, 1997, disclosing for the first time that the Firm had represented Monument since approximately August 1994; currently represented Monument in two state court actions (an unlawful detainer action by Gore against Monument, and a breach of contract action by Monument against Gore), the bankruptcy case, and "general matters" for Monument; and had received $14,743.90 in payments from June

10 through September 18, 1997, in addition to $20,000 on September 24, 1997.

Mr. Shapiro further disclosed that the Firm had applied the monies as follows: $20,000 as the bankruptcy retainer, $5,000 as a retainer for the breach of contract action, $5,000 as a retainer for defense of the unlawful detainer action, and the remaining $4,743.90 to invoices on Monument's various other matters as they came due. He represented that no outstanding amounts were owed to the Firm when the petition was filed. He did not explain the failure to disclose this information in Monument's statement of financial affairs or in the Firm's original employment application, and did not mention the Firm's representation of Monument's principals.

Gore's response filed on January 5, 1998, continued to question the Firm's disinterestedness because of its failure to explain (a) the disposition of the $19,000 that had allegedly been held in trust for rent for Gore, which it contended was in addition to the $20,000 retainer, (b) whether any of the payments it received constituted potential preferences,[1] and (c) whether any of the payments represented compensation for services performed on behalf of Monument's principals, who were individual defendants in the state court litigation.

At a brief continued show cause hearing on January 5, 1998, the court noted that other motions, including a motion by Gore to dismiss or convert the case to chapter 7, had been set for hearing on January 16, 1998. The court continued the show cause hearing to that date in order to consider the retention issue in conjunction with the other pending motions.

At the January 16 hearing, Mr. Neller voluntarily withdrew the Firm's employment application due to a recently discovered conflict of interest unrelated to the issues addressed in response to the court's original show cause order.[5] The court ordered the

---

4. Gore's counsel claimed that the testimony of one of Monument's principals, Alex Tchick, at the § 341(a) meeting revealed the existence of several large recoverable preferences and transfers for less than adequate consideration, and

that Monument had refused Gore's repeated written requests for documentation regarding its financial transactions.

5. Mr. Neller explained that he had just learned that Monument's principals had removed certain

case converted to chapter 7. The court also prohibited the Firm from disbursing any funds in its possession, including the monies held as retainers, pending further court order. Appellee Tevis T. Thompson was subsequently appointed as the chapter 7 trustee ("trustee").

The court filed an Amended Memorandum and Order to Show Cause re Fees on January 22, 1998, which found the Firm's explanation for the delayed filing of its employment application inadequate, and its disclosure of the payments received in addition to the $20,000 retainer inadequate and inconsistent.[6] Stating that it still had not received full and accurate disclosure from the Firm, the court scheduled a show cause hearing for February 19, 1998, and ordered the Firm to file an accounting detailing the disbursement of the two $5,000 retainers, and a description of any legal services provided and costs incurred prior to the petition date for which the retainers allegedly served as security.

The Firm filed a fee application and a supporting legal memorandum on February 12, 1998. The Firm contended that despite not having received court authorization for its employment or any compensation for its services, it nevertheless held a valid attorneys' lien under California law on the $20,000 retainer, and should be granted the following: $41,972.25 in attorneys' fees and $2,263.17 in costs from the petition date of September 24, 1997 through conversion of the case on January 16, 1998; a finding that it held a valid attorneys' lien on the $20,000 retainer; and an order allowing disbursement of the $20,000 retainer as a partial payment of its total fees and costs, with the balance remaining as an unsecured claim against the estate.

At the February 19 show cause hearing, the court stated its oral findings of fact and conclusions of law on the record. The court detailed the Firm's disclosures (and lack thereof) chronologically from the petition date forward, and then allowed the Firm to retain $2,587.50 of the $20,000 retainer for its prepetition services. The court denied all fees for services performed during the chapter 11 phase of the case based on *In re Weibel*, 176 B.R. 209 (9th Cir. BAP 1994), due to the Firm's failure to obtain employment authorization as the debtor in possession's counsel. The court specifically distinguished *In re Century Cleaning Services, Inc.*, 215 B.R. 18 (9th Cir. BAP 1997), upon which the Firm relied for this portion of its fee request. The court granted the Firm leave to file an application for post-conversion fees, subject to a hearing on any objections to the fees' reasonableness.

On March 2, 1998, the Firm filed a Supplemental Brief re Attorney Fees and Costs and for Reconsideration, requesting prepetition costs of $848.25, reconsideration of its post-petition/pre-conversion fees and costs, post-conversion fees of $3,445, and post-conversion costs of $31.20. The trustee objected to some of the amounts requested.

The court filed a Memorandum re Supplemental Brief re Attorneys' Fees and for Reconsideration on March 31, 1998, granting in part and denying in part the Firm's fee application. The court allowed the prepetition costs in full, denied reconsideration of the chapter 11 fees and costs, and allowed post-conversion fees and costs in a reduced amount. The Memorandum included a detailed analysis of the Firm's time entries for its post-conversion services, the trustee's objections, and the court's rulings with respect to each entry. In conclusion, the court allowed the Firm to deduct a total of $4,502.55 [7] from the $20,000 retainer, and

---

furnishings from the business premises, creating a dispute between the individuals and the corporation over the ownership of the property. Consequently, the Firm, which had been representing the principals as well as the corporation, could no longer continue representing the debtor corporation.

6. The court also found that Monument had failed to disclose the additional payments as well as other payments made to third parties within the preference period despite questions on the statement of financial affairs requiring such disclosure, and that the Firm apparently defended Monument's nondisclosure.

7. The court calculated the $4,502.55 as follows: (1) $2,587.50 for prepetition fees; (2) $848.25 for prepetition costs; (3) $1,065 for post-conversion fees; and (4) $1.80 for post-conversion costs.

ordered the Firm to disgorge the balance of $15,497.45 to the trustee. The Firm appeals.

## II. ISSUE

Whether the bankruptcy court erred in denying the attorneys' fees and costs incurred by appellant during the chapter 11 phase of the bankruptcy case, disallowing a portion of the attorneys' fees and costs incurred by appellant post-conversion, and ordering appellant to disgorge the majority of its retainer to the chapter 7 trustee.

## III. STANDARD OF REVIEW

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") reviews a bankruptcy court's decision regarding an award of fees for an abuse of discretion. *In re Weibel, Inc.*, 176 B.R. 209, 211 (9th Cir. BAP 1994); *In re Shirley*, 134 B.R. 940, 942–43 (9th Cir. BAP 1992). The proper construction of Code sections regarding compensation of professionals and attorneys' fees is reviewed *de novo*. *Weibel*, 176 B.R. at 211. Whether *quantum meruit* can be a basis for compensation of debtor's counsel is a question of law which is also reviewed *de novo*. *Id.*

## IV. DISCUSSION

On appeal, the Firm argues that the bankruptcy court erroneously disallowed its chapter 11 fees and costs, notwithstanding the Firm's failure to obtain employment authorization, by disregarding the Firm's attorneys' lien interest in the monies as purportedly allowed under *Century Cleaning, supra*. In other words, the Firm appears to argue that it is not obligated to satisfy the employment and compensation requirements of the Code and Rules merely because it holds a purportedly valid attorneys' lien.

The Firm also argues that it should be entitled to retain the $20,000 retainer because its legal fees were reasonable, and because it would have been granted retroactive employment approval if it had not voluntarily withdrawn its employment application. We disagree with each of these arguments.

8. Section 327 applies to debtors in possession as

1. *The Firm's failure to comply with the employment and compensation requirements of the Code and Rules was fatal to its claim for attorneys' fees and costs*

The Code provisions concerning employment of professionals and payment of fees govern the Firm's compensation for legal services rendered as counsel for the debtor in possession during the chapter 11 phase of the case. 11 U.S.C. § 327 and 330; *see also Weibel*, 176 B.R. at 212; *Shirley*, 134 B.R. at 943. Section 327 provides, in pertinent part:

§ 327. Employment of professional persons

(a) Except as otherwise provided in this section, the trustee,[8] *with the court's approval*, may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(Emphasis added.) In addition, § 330 provides, in pertinent part, that "the court may award to a ... *professional person employed under section 327* ... reasonable compensation for actual and necessary services." 11 U.S.C. § 330(a) (emphasis added).

As the BAP has previously stated on more than one occasion,

[c]ourt approval of the employment of *counsel for a debtor in possession* is the sine qua non to counsel getting paid. Failure to obtain court approval of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees.

*Weibel*, 176 B.R. at 211 (quoting *Shirley*, 134 B.R. at 943–44) (emphasis added).

The BAP has also clearly held that the Code and Rules preclude fee awards for services performed on behalf of a bankruptcy estate based on state law theories not provided for by the Code, such as *quantum meruit*. *Weibel*, 176 B.R. at 212; *Shirley*, 134 B.R. at 944. As the BAP explained in *Weibel*:

Compensation to professionals acting on behalf of the estate must be based on provisions of the Code. The Code does not provide for fee awards based on state law

well as trustees. *See* 11 U.S.C. § 1107(a).

theories such as quantum meruit. [citation omitted.]

176 B.R. at 212.

■ Thus, the Firm's failure to obtain court authorization for its employment was fatal to its ability to obtain payment for its chapter 11 services. The bankruptcy court correctly denied the Firm's request for chapter 11 fees and excluded its *quantum meruit* argument, stating:

> Now, since the [F]irm has abandoned its application for an employment order, I don't think it can receive any fees for services during the Chapter 11, and I base this on *Weibel* [sic]. *Weibel* was not cited. It was an appeal from an order that I issued, and *Weibel* seems to make it clear that for an attorney who's representing a Debtor in possession, as they put it:
>
> > "An order approving employment is the sine qua non."
>
> There [sic] just no other legal theory you can proceed on.

The Firm's reliance on appeal on *Century Cleaning* is misplaced. In *Century Cleaning,* the law firm of Garvey, Schubert & Barer ("Garvey") sought and obtained court approval of its employment as counsel for the debtor in possession. The case converted within a month of the bankruptcy filing from chapter 11 to chapter 7, and Garvey provided additional services as the debtor's chapter 7 counsel. Garvey eventually sought payment for its chapter 7 services from a prepetition retainer that it had received from the debtor, contending that its chapter 7 attorneys' fees were secured by a valid attorney's possessory lien on the retainer under state law. 215 B.R. at 19–20.

The bankruptcy court first determined that Garvey was precluded from receiving payment from the estate under § 330, which by its terms precludes payment from the estate for chapter 7 debtor's counsel. *Id.* at 20–21. The court then determined that Garvey held a valid attorney's lien on its retainer under Oregon law. The court allowed Garvey to be paid under the lien for its chapter 7

services, subject to the requirement that the fees requested were reasonable. *Id.* at 22. The BAP affirmed, observing that although the lien was potentially avoidable under § 545, neither the trustee nor the UST had attempted to do so. Consequently, Garvey held a valid, unavoided lien on the retainer, from which it could be paid. *Id.*

*Century Cleaning* is distinguishable, however, because it involved counsel who was employed with court approval to represent a debtor in possession. No objections were raised to Garvey's employment on the grounds of its disinterestedness or nondisclosure of material facts. Garvey sought payment for its post-conversion chapter 7 fees only, and not for any chapter 11 fees. *Century Cleaning* does not provide support for the Firm's attempt to obtain payment of its chapter 11 fees and costs, in the absence of its compliance with its statutory obligation to obtain employment authorization.

2. *The Firm's possession of an attorneys' lien did not obviate its obligation to satisfy the employment and compensation requirements of the Code and Rules*

 a. *The attorneys' lien secures only the amount determined by the court to constitute the underlying debt*

■ *Century Cleaning* does not support the Firm's contention that its possession of a valid [9] attorneys' lien entitles it to retain the entire $20,000 retainer. Such an interpretation would render the employment and compensation requirements of the Code and Rules meaningless. An attorneys' lien simply secures the amount of the underlying debt as determined by the bankruptcy court. In this case, the bankruptcy court determined that the Firm was entitled to receive attorneys' fees in an amount significantly less than the $20,000 retainer. The Firm's attorneys' lien secures only the amount of fees and costs specifically allowed by the bankruptcy court, *not* the amount of the entire retainer.

---

9. The bankruptcy court did not rule on the validity of the Firm's attorneys' lien, and it is equally unnecessary for this Panel to do so. We have assumed for purposes of this Opinion that the attorneys' lien in question was properly created and perfected.

b. *A lien avoidance action under § 545 is unnecessary*

■ *Century Cleaning* also does not support the Firm's contention that the trustee was required to avoid the Firm's attorneys' lien under § 545, and that its lien remains valid because the trustee failed to do so. The issue before this Panel is not lien avoidance, but the disallowance of fees that were not properly earned.

Section 329(b) [10] authorizes bankruptcy courts to order the return of any compensation paid to a debtor's attorney that exceeds the reasonable value of the services rendered; a lien avoidance action is not required. The bankruptcy court found that many of the Firm's services were excessive and reduced the Firm's post-conversion fee award accordingly. The trustee was not required to file an avoidance action under § 545.

c. *The Firm's "reasonableness" argument ignores the requirements of the Code and Rules regarding chapter 11 fees and costs and the bankruptcy court's findings of fact regarding post-conversion fees and costs*

In *Century Cleaning*, the bankruptcy court allowed Garvey to be paid under its state law attorneys' lien for *post-conversion* services after first determining that Garvey was ineligible for payment from the estate under § 330. 215 B.R. at 20–22 (emphasis added). The bankruptcy court recognized that *Century Cleaning* does not support payment for pre-conversion services under a "reasonableness" theory, stating:

[i]f the order was granted in the Chapter 11, the court notes that no objection is made to the fees requested post-petition—post-conversion, on reasonableness grounds. So it's not a blanket approval for any fees, but to the extent it might support some fees post-conversion, representing the Debtor, if they are found to be reasonable—there's no objection or after objection, they're found to be reasonable—but not—I don't think it's any support for allowing you to obtain from the retainer any fees for representing the debtor in possession during the Chapter 11.

■ In addition, Century Cleaning is inapplicable with respect to the Firm's post-conversion fees. *Century Cleaning* does not reflect that any objections were raised to the reasonableness of Garvey's post-conversion fees. 215 B.R. at 22. The trustee in this case, however, filed objections to the Firm's post-conversion services. The bankruptcy court's Memorandum re Supplemental Brief re Attorneys' Fees and for Reconsideration filed on March 31, 1998, contained a detailed analysis of the Firm's time entries for its post-conversion services, the trustee's objections, and the court's rulings with respect to each entry. The bankruptcy court disallowed a significant amount of the requested fees based on specific findings that many of the Firm's time entries were excessive. The record on appeal reflects that this result was not an abuse of the bankruptcy court's discretion.

3. *The Firm's speculation regarding retroactive employment is irrelevant*

■ The court found, *inter alia*, that the Firm's explanation for the delayed filing of its employment application was inadequate; conducted numerous show cause hearings concerning disinterestedness and nondisclosure of material facts, including the Firm's dual representation of Monument and Monument's principals; and expressed concerns about potential preferential payments that the Firm might have received. Most of these issues were unresolved when the Firm withdrew its employment application. Therefore, the Firm's argument regarding retroactive employment authorization is both speculative and irrelevant.

---

10. Section 329 provides, in pertinent part:
§ 329. Debtor's transactions with attorneys
(a) Any attorney representing a debtor in a case under this title, ... shall file with the court a statement of the compensation paid or agreed to be paid, ...

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, ...

## V. CONCLUSION

The bankruptcy court properly disallowed appellant's chapter 11 attorneys' fees and costs based on appellant's failure to obtain court approval of its employment as counsel for the debtor in possession. Appellant's possession of an attorneys' lien under state law did not obviate its obligation to satisfy the employment and compensation requirements of the Code and Rules, and an action to avoid the attorneys' lien under § 545 was unnecessary.

The purported reasonableness of appellant's fees also did not obviate the requirements of the Code and Rules regarding fees and costs incurred during the chapter 11 phase of the case. Furthermore, the bankruptcy court properly determined that the majority of appellant's post-conversion fees and costs were excessive.

Accordingly, the bankruptcy court's order on appellant's final fee application is AFFIRMED.