**In re NORTH STAR MANAGEMENT, LP, North Star Management, LLP, Debtors.**

**Michael J. Farrell, Chapter 7 Trustee, Plaintiff,**

**v.**

**American Executive Management, Inc., and Countryside Partners, LLC, Defendants.**

Bankruptcy Nos. 01–30252, 01–30251. Adversary No. 02–7057.

United States Bankruptcy Court, D. North Dakota.

Oct. 10, 2003.

David Johnson, Fargo, ND, for Michael Farrell.

Jay Carlson, Fargo, ND, for American Executive Management, Inc.

Lowell Bottrell, Fargo, ND, for Countryside Partners, LLC.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The plaintiff, Chapter 7 trustee Michael J. Farrell, commenced the above-captioned adversary proceeding by Complaint filed October 11, 2002, seeking a judgment against American Executive Management, Inc. (AEM) in the total amount of $102,304.38, comprised of $82,935.12 for

AEM's breach of its contractual and fiduciary duties to ensure that estate funds were not dissipated by unauthorized individuals and to provide a bond to the estate for its services, and $19,369.26 for the fees and expenses AEM paid itself for managing a hotel owned by Debtors North Star Management, LP, and North Star Management, LLP.

The trustee also sought a determination of the competing claims, if any, of the trustee and Countryside Partners, LLC (Countryside) to rents and profits. Countryside acquired the Debtors' hotel through a foreclosure sale and took legal possession of the hotel on May 8, 2001. Countryside filed an Answer and Counterclaim on April 2, 2003, seeking a determination of the allocation of rents and profits belonging to the bankruptcy estate as well as those belonging to Countryside for its ownership of the hotel from May 8, 2001, to the present. Countryside sought a judgment in the amount of $177,184.71 minus reasonable expenses. Prior to trial, the trustee and Countryside reached an agreement regarding rents and profits received for the use of the hotel property prior to and after May 8, 2001. Specifically, Countryside and the estate agreed that

they will share any recovered rents and profits equally. Although mentioned in neither the trustee's nor Countryside's post trial brief, the trustee testified at the trial on the matter that the estate also received or would receive $100,000.00 from Countryside to release the estate's claim to any ownership interest in and recovery of property. Regardless of the precise terms of the proposed settlement agreement, no such agreement has been filed with or approved by the Court. Nonetheless, it is evident to the Court that the issue of the competing claims of the estate and Countryside has been resolved and therefore will not be addressed further.[1]

AEM filed a Verified Answer and Cross Claim on March 27, 2003. AEM requests the Complaint be dismissed and affirmatively asserts it is entitled to damages in an amount exceeding $20,000.00 because of the estate's termination of AEM's contract. AEM cross claims, alleging that after AEM's management contract was terminated, Countryside received income that was generated by the hotel during AEM's management and to which AEM is therefore entitled.[2]

The matter was tried on August 21–22, 2003.

1. In the Complaint, the trustee also sought an accounting for all rents, profits and issue from the hotel owned by the Debtors from the period of AEM's management, as well as turnover of all hotel books and records. At trial, the trustee testified that AEM provided the accounting he sought. Regarding turnover, the trustee states in his post trial brief, "AEM failed to render any report or accounting of its professional services until the eve of trial." Also, in the concluding portion of his post trial brief, the trustee requests only a judgment against AEM for the fees and expenses AEM paid itself and for the funds allegedly misappropriated by Patel, and not the other relief originally sought in the Complaint. Accordingly, the Court deems the issues involving the trustee's requests for an accounting and turnover resolved and therefore moot.

2. AEM also challenged this Court's jurisdiction because the Management Agreement between the Debtors' estate and AEM contains arbitration provisions. AEM stated that it would be moving the Court by separate motion to require arbitration of the dispute. AEM has not filed such a motion, nor did AEM pursue its jurisdictional argument either at trial or in its post trial brief. The issue is therefore deemed abandoned. Moreover, the Court notes that even had AEM pursued the issue, section 20.05 of the Management Agreement provides that in the event that a dispute arises with a person not a party to the agreement, i.e., Countryside, and the dispute also involves both AEM and the estate, the arbitration provisions of the agreement shall not apply to the dispute.

## I

The Debtors owned a hotel in Bismarck, North Dakota. They filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on February 14, 2001. The cases were converted to Chapter 7 on September 18, 2001, and Michael J. Farrell was appointed trustee of the jointly-administered cases on the same date.

Prior to conversion, J.W. Associates, Ltd., was appointed as examiner in this case. John Wagner, president of J.W. Associates, was retained by the United States Trustee to conduct an investigation into the accounts of the Debtors. Wagner submitted a report indicating that Sanjay Patel, the managing partner of the Debtors, removed approximately $87,535.12 from an account of the Debtors in May 2001 without sufficient documentation. Attached to the report was a list of checks drawn on, and debits to, the account. The bulk of this money was paid or transferred to Patel after the commencement of the Chapter 11 proceeding but prior to the conversion to Chapter 7. The trustee brought an adversary proceeding, *Farrell v. Patel, et al.,* number 02–7007, against Patel and others, and a judgment was entered in favor of the trustee on August 29, 2002, for $82,935.12, to recover the unauthorized post-petition transfers to Patel.

Reviewing documents in connection with the administration of the Debtors' cases, the trustee became familiar with the court-approved employment of AEM to manage the Debtors' hotel. The trustee concluded that the unauthorized transfers from the Debtors' account occurred during AEM's period of management of the hotel, and he commenced the adversary proceeding at bar.

AEM is a hotel management company and self-proclaimed expert in the field. Prior to being employed in this case, Donald Boos, AEM's president, stated in a letter to the Debtors' attorney that AEM would provide all accounting services and reporting, exclusive of federal and state tax returns, on a daily and monthly basis, and that its reporting would be sufficient for any required bankruptcy trustee reporting. From its Kansas City headquarters, Boos would be personally involved in the oversight of the property, including the trustee reporting and any reorganization plans. AEM's comptroller, Marita Cappo, would supervise accounting services, daily cash, receivable and payable issues. Weekly reports of cash and obligations would be available to all parties requiring the same, and monthly reporting would be forwarded as required by the Court.

Boos testified he was offered a five-year contract by the Debtors. At the time Boos accepted the employment offer, he was aware the Debtors had filed a Chapter 11 bankruptcy case, but he testified he was not aware of the foreclosure status of the property. The Debtors moved the Court to employ AEM as the management company of the Debtors' hotel on March 21, 2001. In their brief in support of the motion, the Debtors stated that Boos had experience working with hotels going through the reorganization process, that AEM had represented other organizations in Chapter 11, and that the principals of AEM were familiar with the Chapter 11 process and reporting requirements. AEM had managed numerous hotels, and was operating sixteen other properties at the time. A Rule 2014(a) verification executed by Boos declaring that the information in the Debtors' motion was true was filed March 23, 2001. On April 6, 2001, this Court approved the employment of AEM as the management company of the Debtors' hotel, effective April 9, 2001. The terms of AEM's employment were substantially set forth in the Management Agreement attached to the motion, which

specified various duties and responsibilities of AEM as the management company.

Having many years of experience in the business, Boos testified that it was common practice to have a written management agreement. In fact, a form management agreement that AEM developed over time, with a few minor modifications, was used in this case. Boos testified that the Debtors' attorney added language to the agreement to reference the Debtors' bankruptcy but that there was not significant negotiation over the agreement. Boos did not retain an attorney to assist and advise him at any time relevant to this case; rather, he testified that he relied solely on the Debtors' attorney.

AEM took possession of the hotel on April 9, 2001, and began providing on-site management. Specifically, AEM provided a general manager and six or seven other employees. When AEM took over management of the hotel on April 9, 2001, the Debtors had $85,093.85 in its account, but the Debtors and AEM agreed that Eide Bailly, LLP, the firm that had been handling the Debtors' accounting prior to AEM's involvement, would handle the accounting and reporting for the month of April. Boos testified that he was not aware of any restriction on the Debtors' use of the money in the account; in fact, Boos stated repeatedly that he thought the Debtors had a right to the money. Boos stated that he kept this account because there had not been a change in ownership. When AEM took over management, this account was renamed the "credit card account" and used to isolate credit card payments and to make the audit trail more definite. In addition to authorizing certain AEM employees to access this account, Boos testified that AEM also opened four new bank accounts in its name. Boos testified that funds were not transferred into the new accounts until April 25, 2001.

Although Sanjay Patel was not authorized to access any of the accounts, on May 6, 2001, Boos became aware that Patel had withdrawn money from the credit card account on the previous day, May 5, 2001. The withdrawal had resulted in an overdraft, and the bank contacted Boos. Boos in turn contacted Patel and the Debtors' attorney, Michael Wagner, and the next day Patel obtained a cashier's check and replaced the money taken from the account. Boos did not take any precautionary actions to prevent Patel from again removing the Debtors' funds from the account. Patel also withdrew money on May 21, 2001, May 24, 2001, and May 30, 2001, but Boos testified that he was not aware of these transactions until June 2001, after receiving a bank statement and after AEM's employment had been terminated, because none of the subsequent withdrawals resulted in an overdraft. Boos testified that the Debtors' attorney told him that if Patel accessed the accounts, Patel would be held accountable by the trustee.

AEM paid itself, either directly or through its employees, the following fees and expenses:

| | |
|---|---|
| May 1, 2001 | $ 3,000.00 |
| May 7, 2001 | 3,500.00 |
| May 7, 2001 | 4,430.00 |
| May 7, 2001 | 1,218.20 |
| May 7, 2001 | 598.91 |
| May 7, 2001 | 620.97 |
| May 22, 2001 | 224.23 |
| June 1, 2001 | 4,343.62 |
| June 5, 2001 | 697.07 |
| June 5, 2001 | 253.66 |
| June 5, 2001 | 301.95 |
| June 8, 2001 | 180.65 |
| TOTAL | $19,369.26 |

AEM did not file an application with the Court for authorization of these payments.

Boos conceded that AEM did not provide a surety bond as required by the Management Agreement. He explained that his focus was on getting people to the hotel in Bismarck and that a bond was going to be posted with the plan of reorganization.

Paul Darling, an owner of Countryside, testified about hotel industry standards and the condition of the hotel when Countryside received physical possession of the property on June 8, 2002. Although Countryside obtained legal title to the property through foreclosure on May 8, 2002, it could not occupy the premises until it obtained a court order to do so on June 8, 2002. Darling testified that Countryside has not received any of the rents and profits received from the time it took legal title to the time it took physical possession of the hotel, yet Countryside has had to pay outstanding expenses to maintain relations with the vendors in the industry. Darling also testified that by the time Countryside gained court approval to take possession of the hotel, computers and televisions were missing, documents from the front desk were missing, and there was not any cash in any of the tills. Because the schedule book was also missing, Countryside did not have a record of who was staying at the hotel that night, nor did it have a record of who had reservations to stay in the future. Boos testified, however, that AEM did not collect $4,000.00 from guests who had not checked out of the hotel as of June 7, 2001.

## II

### A. AEM's Fees and Expenses

The trustee seeks to disgorge from AEM the money it paid itself for professional fees and expenses. AEM first argues the services it provided were operational rather than professional and that it was authorized by the order approving its employment to pay itself without further court approval.

Whether a person is a professional person for purposes of section 327 of the United States Bankruptcy Code,[3] and therefore is subject to court approval of compensation and reimbursement of expenses pursuant to section 330, relates to the degree of autonomy with which the person operates and the degree of supervision or direction required by the debtor in possession or the trustee. *In re Leslie Oil and Gas Co., Inc.*, 98 B.R. 774, 776 (Bankr. S.D.Ohio 1989). A professional person is a person who plays a central role in the administration of a bankruptcy debtor's affairs and is intimately involved in the administration of the debtor's bankruptcy case. *Id.* at 775.

AEM provided a specialized service with relatively unfettered discretion and autonomy. AEM provided on-site management and employees for the Debtors' sole asset, the hotel. AEM set up bank accounts, took over control of the Debtors' existing bank account, paid employees, incurred and paid debts, provided accounting and reporting services, and handled virtually every other aspect of the day-to-day

---

**3.** Section 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Although the language of section 327(a) refers only to professionals employed by a trustee, the section also applies to professionals employed by a Chapter 11 debtor in possession pursuant to section 1107(a), which provides in relevant part, "a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." *See, e.g., In re Diamond Mortgage Corp.*, 135 B.R. 78, 88 (Bankr. N.D.Ill.1990) (stating that section 327(a) applies to professionals retained by a chapter 11 debtor in possession).

affairs of the business. Moreover, one of the reasons AEM's employment was sought was to aid in the reorganization process. In short, AEM qualifies as a professional person,[4] and it therefore is subject to the requirements of section 330.

 AEM next argues that the order approving the Management Agreement is contrary to Bankruptcy Code sections 327 and 328 which require compensation to be awarded after notice and hearing. First, neither section 327 nor section 328 contain a notice and hearing requirement, but section 330 does. In any event, the order approving AEM's employment is in no way contrary to sections 327 and 328. Rather, in order for AEM to have received compensation for its services, prior court approval was required because professional persons are not entitled to compensation out of a Chapter 11 estate unless an order is obtained approving the initial retention. *See Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail, Inc.),* 226 B.R. 219, 224 (9th Cir. BAP 1998); *Binswanger Companies v. Merry–Go–Round Enterprises, Inc.,* 258 B.R. 608, 612 (D.Md. 2001); *In re Tri–State Plant Food Inc.,* 273 B.R. 250, 257 (Bankr.M.D.Ala.2002); *In re Midway Indus. Contractors, Inc.,* 272 B.R. 651, 662–63 (Bankr.N.D.Ill.2001); *In re Foster,* 247 B.R. 731, 733 (Bankr. S.D.Ohio 2000). The order did not—and indeed could not—negate the need for subsequent court approval of AEM's compensation and reimbursement under section 330. If professionals were permitted to perform their services and subsequently seek reimbursement for any and all expenses without any kind of court review, professionals would essentially be given carte blanche status by the Court. Because AEM has not complied with the requirements of section 330, the $19,369.26 it has paid itself must be disgorged.

**B. The Funds Misappropriated by Patel**

The trustee also seeks to recover the money misappropriated from the Debtors' accounts on the bases of AEM's breach of fiduciary duties and breach of contract.

**1. Breach of fiduciary duties**

 AEM argues that the fiduciary duties imposed on a debtor in possession are non-delegable, and that the management agreement merely creates an agency relationship with the debtor in possession as the principal and AEM as the agent. A Chapter 11 debtor in possession administers the assets of the estate as a fiduciary for both the equity interests and creditors. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Hall v. Perry (In re Cochise College Park),* 703 F.2d 1339, 1357 (9th Cir.1983); *Hansen v. Finn (In re Curry & Sorensen, Inc.),* 57 B.R. 824, 828 (9th Cir. BAP 1986); *In re Roblin Indus., Inc.,* 52 B.R. 241, 243 (Bankr. W.D.N.Y.1985). This principle of fiduciary duties and obligations carries over to professionals who are retained for the debtor in possession. In fact, an agent of a bankruptcy trustee or debtor in possession is held to the same fiduciary standards as the trustee or debtor in possession. *See Salazar v. McCormick (In re Crestview Funeral Home, Inc.),* 287 B.R. 832, 838 (Bankr. D.N.M.2002); *In re Allied Gaming Mgmt., Inc.,* 209 B.R. 201, 203 (Bankr.W.D.La. 1997); *In re Q.P.S., Inc.,* 99 B.R. 843, 845 (Bankr.W.D.Tenn.1989); *In re Lowry Graphics, Inc.,* 86 B.R. 74, 80 (Bankr. S.D.Tex.1988).

---

**4.** The definition of "person" includes "individual, partnership, and corporation." 11 U.S.C. § 101(41).

AEM next argues that if it did have fiduciary duties, there was no breach because the funds were taken without AEM's authorization.

 The basis for imposing liability on AEM for Patel's misappropriation of the Debtors' funds by Sanjay is rooted in AEM's status as fiduciary of the estate's creditors. The duty to collect and conserve the assets of the estate and to maximize distribution to creditors is a fiduciary obligation. Professionals employed by the trustee or debtor in possession have a legal duty and obligation to preserve the assets of the debtor's estate pursuant to section 704(2)[5] which provides that the trustee shall "be accountable for all property received." 11 U.S.C. § 704(2). The interests of each creditor are affected by any action that affects the dividend payable to creditors, and accordingly, the obligations of a debtor—and professionals employed by the debtor—are necessarily fiduciary. *In re Sky Valley, Inc.*, 135 B.R. 925, 933 (Bankr.N.D.Ga.1992). A fiduciary relationship creates the highest order of duty imposed by law. *Sallee v. Fort Knox Nat'l Bank (In re Sallee)*, 286 F.3d 878, 891 (6th Cir.2002); *see also Welt v. Sasson (In re Dollar Time Group, Inc.)*, 223 B.R. 237, 245 (Bankr.S.D.Fla. 1998) (citing Black's Law Dictionary 625 (6th ed.1990)).

 Although a trustee or debtor in possession, and by extension discussed above, a professional, will not be liable for misjudgments in matters where discretion is allowed, he or she may be held liable for both negligent and intentional violations of the duties imposed upon him by law. *See Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 753 (4th Cir.1993); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir.1989); *Kalyna v. Swaine*

*(In re Accomazzo)*, 226 B.R. 426, 429 (D.Ariz.1998); *United Bank of Mich. v. Falconer (In re Falconer)*, 79 B.R. 283, 288 (W.D.Mich.1987); *Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 244 (E.D.Tenn.2000); *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466, 474 (Bankr. E.D.N.Y.1999). Further, even though the professional does not have an obligation to investigate every matter brought to his or her attention, he or she is required to look into charges of the concealment of assets, fraudulent conduct, and any other wrongdoing by the debtor or other third parties. This duty to preserve assets includes any assets that are known or have been brought to the professional's attention as misappropriated, and the failure to affirmatively act upon learning of such misappropriation is negligence. The failure to investigate such a matter is a breach of his or her fiduciary duty to the estate.

 In this case, after the first time Patel withdrew money, on May 5, 2001, AEM did not take any precautionary actions whatsoever to prevent Patel from again removing the Debtors' funds from the account. It did not report the incident to the United States Trustee or this Court. It did not discuss the matter with the bank or any AEM employee. It did not move the accounts to another bank. Iit did not check the account on a daily basis thereafter to make sure Patel did not again access the account. AEM's failure to protect the estate from further misappropriation was negligent and constituted a breach of AEM's fiduciary duty to the estate. As such, AEM is liable for the $82,935.12 determined to have been misappropriated by Patel in *Farrell v. Patel, et al.*, adversary proceeding number 02–7007.

### 2. Breach of Contract

 A contract existed between AEM and the estate in the form of the Manage-

---

**5.** Section 704(2) is applicable in chapter 11 cases through section 1106.

ment Agreement. The Management Agreement set forth various duties and responsibilities of AEM as the management company. For example, AEM was to "comply with all applicable bankruptcy laws and orders." As discussed in the preceding subsection, AEM failed to comply with the fiduciary duty imposed by bankruptcy law. AEM also failed to obtain a bond in an amount not less than $1,000,000.00 as required by the Management Agreement. The fact that the bond would not have provided coverage for Patel's actions, an argument raised by AEM, is irrelevant. The agreement provided that the Debtors were to "have no right to draw upon or use such funds except in accordance with, or upon termination of, the Agreement." As already discussed, AEM allowed Patel to access the accounts. Each of these constitutes a material breach of the contract. As such, AEM's assertion that it is entitled to damages in an amount exceeding $20,000.00 because of the estate's termination of the contract is without merit.

## C. Rents and Profits

In his Complaint, the trustee seeks an accounting of rents and profits and turnover of AEM's books and records, as well as a determination of the competing claims of the trustee and Countryside to rents and profits. Significantly, however, the trustee does *not* seek a judgment for the recovery of lost rents and profits based on AEM's breach of contract. Countryside, on the other hand, *does* seek a judgment against AEM for hotel rents and profits received by AEM, but Countryside fails to provide a legal basis for its claim. AEM cross claims against Countryside, alleging that after AEM's management contract was terminated Countryside received income that was generated by the hotel during AEM's management and to which AEM is therefore entitled, but AEM simi-larly fails to provide a legal basis for its cross claim.

Although AEM's breach of contract may give rise to an action on the part of the trustee for rents and profits, the trustee has not pursued such an action, much loss met the burden of proving its damages. The facts pertaining to the issue of rents and profits are muddled, and the parties have not brought much clarity to the matter; in any event, the arguments of AEM and Countryside as to alleged damages are irrelevant because of the lack of privity between them.

### III

Based on the foregoing, the Court concludes that Michael J. Farrell, the Chapter 7 Trustee of the jointly-administered estates of Debtors North Star Management, LP, and North Star Management, LLP, is entitled to judgment in the total amount of $102,304.38 against American Executive Management, Inc. All other claims are hereby DISMISSED.

**SO ORDERED.**

JUDGMENT MAY BE ENTERED ACCORDINGLY.