# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 03-6082ND

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| North Star Management, LP; North | * | |
| Star Management, LLP | * | |
| | * | |
| Debtors | * | |
| | * | |
| Michael J. Farrell, Chapter 7 Trustee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee | * | District of North Dakota |
| | * | |
| v. | * | |
| | * | |
| American Executive Management, Inc.; | * | |
| | * | |
| Defendant-Appellant | * | |
| | * | |
| Countryside Partners, LLC | * | |
| | * | |
| Defendant-Appellee | * | |
| | * | |

_____

Submitted: March 25, 2004
Filed: May 4, 2004

_____

Before KRESSEL, Chief Judge, DREHER, and MAHONEY, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

American Executive Management appeals from an order of the bankruptcy court granting judgment to the trustee. We reverse.

BACKGROUND

The debtors owned and operated a hotel in Bismarck, North Dakota. On February 14, 2001, the debtors filed for bankruptcy relief under Chapter 11. On March 21, 2001, the debtors moved the bankruptcy court to employ American Executive Management, a hotel management company, to manage the hotel. On April 6, 2001, the bankruptcy court approved the employment of American Executive Management. The bankruptcy court's order provided that the terms of the employment would be substantially the terms as set forth in the Management Agreement, the contract between the debtors and American Executive Management. The order also provided that the fees charged by American Executive Management would be ordinary and necessary expenses of the business, thus payable from cash collateral, and paid in accordance with the Management Agreement.

On April 9, 2001, American Executive Management took possession of the hotel and began providing on-site management. On this date, the business bank account of the debtors had a balance of $85,093.85, but the debtors and American Executive Management agreed that Eide Bailly, LLP, the firm that handled the accounting prior to American Executive Management's involvement, would continue to handle the accounting and reporting for the month of April. American Executive Management was not aware of any restriction on the debtors' use of the money in the account.

When American Executive Management took over management of the debtors' hotel, the debtors' account was renamed the "credit card account" and used to isolate credit card payments and to make the audit trail more definite. American Executive Management authorized a certain number of its employees to access the debtors' account and also opened four new bank accounts in its name. The debtors' funds were

2

not transferred to the new accounts until April 25, 2001, the date American Executive Management took exclusive supervision, direction, and control over the operation of the hotel. American Executive Management did not provide a surety bond[1] as required by the Management Agreement.

Pursuant to the Management Agreement[2] Sanjay Patel, the managing partner of the Debtors, was prohibited from accessing the accounts. Nevertheless on May 6, 2001, Donald Boos, American Executive Management's president, became aware that Patel had withdrawn $36,000 from the credit card account on May 5, 2001. The withdrawal resulted in an overdraft, and the bank contacted Boos. Boos in turn contacted Patel and the debtors' attorney. The next day, Patel obtained a cashier's check and replaced the money taken from the account. Patel again wrongfully withdrew money from the account on the following dates:

> May 11, 2001  $5,941.26
> May 11, 2001  $495.75
> May 21, 2001  $12,416.14
> May 21, 2001  $5,942.50
> May 24, 2001  $3,681.75
> May 30, 2001  $4,252

Before the debtors filed their petitions, Countryside had foreclosed its mortgage on the hotel. It took legal possession of the hotel on May 8, 2001, the date

---

[1] The Management Agreement required that American Executive Management maintain a surety bond in an amount not less than $1,000,000 or other amount as required by the United States Trustee or the court.

[2] The Management Agreement mandated that the debtor in possession was to have no right to draw upon or use such funds except in accordance with, or upon termination of, the Agreement.

the period of redemption expired. Countryside, however, did not obtain physical possession of the hotel until June 8, 2001. At the end of the redemption period, there was a balance of $17,128.59 in the debtors' account. In June of 2001, after receiving a bank statement and after American Executive Management's employment was terminated, Boos was made aware of Patel's additional unauthorized transactions.

During its tenure as manager of the hotel, American Executive Management paid itself the following fees and expenses[3]:

| | |
|---|---|
| May 1, 2001 | $3,000.00 |
| May 7, 2001 | 3,500.00 |
| May 7, 2001 | 4,430.00 |
| May 7, 2001 | 1,218.20 |
| May 7, 2001 | 598.91 |
| May 7, 2001 | 620.97 |
| May 22, 2001 | 224.23 |
| June 1, 2001 | 4,343.62 |
| June 5, 2001 | 697.07 |
| June 5, 2001 | 253.66 |
| June 5, 2001 | 301.95 |
| June 8, 2001 | 180.65 |
| TOTAL | 19,369.26 |

American Executive Management did not file an application with the bankruptcy court for authorization of these payments.

_____

[3] The Management Agreement required the debtors to pay American Executive Management the following: a management fee equal to four and one-half percent of gross revenues, payable monthly on the first day of each month; a base management fee of no less than $3,500 per month; an accounting fee equal to seven dollars per room per month; a commencement fee in the amount of $3,000; a yearly incentive management fee equal to ten percent of net operating income, in excess of $550,000 up to $650,000 and fifteen percent of net operating income in excess of $650,000; reimbursement of costs and expenses.

In August of 2001, the United States Trustee appointed J.W. Associates as examiner in order to conduct an investigation into the accounts of the debtors. The examiner submitted a report indicating that Sanjay Patel, the managing partner of the debtors, removed approximately $87,535.12 from an account of the debtors during the month of May 2001 without authorization or sufficient documentation. The bulk of this money was paid or transferred to Patel after the commencement of the Chapter 11 case but prior to the conversion to Chapter 7 and the appointment of Michael J. Farrell as the trustee on September 18, 2001.

The trustee brought an adversary proceeding against Patel and others to recover the unauthorized post petition transfers. On August 29, 2002, a judgment was entered in favor of the trustee for $82,935.12. After reviewing documents in connection with the administration of the debtors' cases, the trustee concluded that the unauthorized transfers from the debtors' account occurred during American Executive Management's period of management of the hotel, which was from April 9 through June 8, 2001. As a result, the trustee commenced this adversary proceeding on October 11, 2002. The trustee sought a $102,304.38 judgment against American Executive Management for its breach of its contractual and fiduciary duties to ensure that estate funds were not dissipated by unauthorized individuals and to provide a bond to the estate, and for the fees and expenses American Executive Management paid itself for managing the debtors' hotel. The trustee also sought a determination of the competing claims, if any, of the trustee and Countryside Partners to rents and profits.

On March 27, 2003, American Executive Management filed a verified answer and a cross claim against Countryside. American Executive Management requested that the complaint be dismissed and asserted it was entitled to damages in an amount exceeding $20,000 because of the estate's termination of its contract. American Executive Management also argued that it was entitled to income Countryside

received after the termination of its contract because that income was generated by the hotel during American Executive's management.

On April 2, 2003, Countryside filed an answer and a counterclaim, seeking a determination of the allocation of rents and profits belonging to the bankruptcy estate as well as those belonging to Countryside for its ownership of the hotel from May 8, 2001 to June 8, 2001. Countryside sought a judgment against American Executive Management for hotel rents and profits received by that company in the amount of $177,184.71 minus reasonable expenses. Prior to the August 2003 trial, the trustee and Countryside reached an agreement regarding rents and profits received for the use of the hotel property prior to and after May 8, 2001. Countryside and the estate agreed that they would share any recovered rents and profits equally, and the estate also would receive $100,000 from Countryside to release the estate's claim to any ownership interest in and recovery of property.

In its October 10, 2003 order, *Farrell v. American Executive Management, Inc.*, 305 B.R. 312 (Bankr.D.N.D. 2003), the bankruptcy court found the following: (1) American Executive Management was a professional person for the purposes of 11 U.S.C. § 327, and did not comply with the requirements of 11 U.S.C. § 330 and as a result the $19,369.26 it paid itself must be disgorged; (2) American Executive Management's failure to protect the estate from misappropriations by Patel after May 5, 2001 was negligent and constituted a breach of its fiduciary duty to the estate, and as a result it was liable for the $82,935.12 misappropriated by Patel; (3) American Executive Management materially breached the Management Agreement by failing to obtain a bond as required by that agreement, and by failing to prevent Patel from having access to the accounts. The bankruptcy court granted the trustee judgment in the total amount of $102,304.38 against American Executive Management.

As a result of the settlement agreement between Countryside and the estate, the bankruptcy court found that the issue of competing claims of the estate and

Countryside had been resolved, and therefore dismissed all claims, counterclaims, and cross claims other than trustee's complaint against American Executive Management. American Executive Management appeals from the part of the October 10, 2003 order that awards a money judgment to the trustee and against American Executive Management. None of the parties have appealed from that part of the order dismissing all other claims.

## STANDARD OF REVIEW

On appeal, we review the bankruptcy court's findings of fact for clear error. Fed.R.Bankr.P. 8013; *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *Christians v. Crystal Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1413 (8th Cir. 1996)*; Hartford Life and Accident Ins. Co. v. Henricksen (In re Henricksen)*, 227 B.R. 759 (B.A.P. 8th Cir. 2002). We review conclusions of law *de novo. Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). A finding of fact will not be reversed as clearly erroneous unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Wintz v. American Freightways, Inc. (In re Wintz)*, 230 B.R. 840, 844 (B.A.P. 8th Cir. 1999) (citing *Waugh v. Eldridge (In re Waugh)* 95 F.3d 706, 711 (8th Cir. 1996)).

## DISCUSSION
## WAS AMERICAN EXECUTIVE MANAGEMENT A PROFESSIONAL PERSON?

Although the parties argue much about whether American Executive Management was a professional person or not, we need not address this issue nor decide in the abstract whether a hotel management company is a professional person. It is the law of this case that it is a professional person. 11 U.S.C. § 327(a) requires a debtor to obtain court approval in order to employ a professional person. *In re Bartley Lindsay Co.*, 120 B.R. 507, 511 (Bankr.D.Minn. 1990). The Bankruptcy Code provides no definition of "professional persons" but the term has regularly been

7

accepted to mean persons who play a central role in the administration of the proceedings. *DOLA Intern. Corp. v. Bordlemay (In re DOLA Intern. Corp.*), 88 B.R. 950, 954 (Bankr.D.Minn. 1988).

The debtors, citing 11 U.S.C. § 327 for authority in its motion, treated American Executive Management as a professional person when it applied for court approval for American Executive Management's employment. In the Management Agreement, American Executive Management acknowledged its status as a professional under the Bankruptcy Code. Likewise, the bankruptcy court treated American Executive Management as a professional person when it had a hearing on the matter and granted the debtors' motion to approve its employment. The order approving retention also carved out payment to it, along with other professionals in the case. We think it is too late to dispute that American Executive Management is a professional person. Thus, for purposes of this opinion, we assume American Executive Management is a professional person.

PAYMENT OF AMERICAN EXECUTIVE MANAGEMENT'S FEES AND EXPENSES

While 11 U.S.C. §§ 330 and 331 contemplate the disbursement of fees to a professional after compliance with those sections, nothing in those sections prohibit the bankruptcy court from authorizing a professional person to be paid its fees on an ongoing basis with the actual application and allowance of those fees to come later. Under 11 U.S.C. §328, which authorizes the employment of professionals on any reasonable terms and conditions including retainers, application procedures whereby the professionals may be paid each month without prior court approval of billing statements are permissible. *See In re ACT Mfg., Inc.,* 281 B.R. 468 (Bankr.D.Mass. 2002); *In re Mariner Post-Acute Network, Inc.*, 257 B.R. 723 (Bankr.D.Del. 2000); *Matter of Dandy Lion Inns of America*, 120 B.R. 1015, 1017 (Bankr.D.Neb. 1990). This is exactly what occurred in this case. In its April 6, 2001 order approving the employment of American Executive Management, the bankruptcy court stated that

the terms of the employment would be substantially the terms as set forth in the Management Agreement. In that agreement, the debtors agreed to pay American Executive Management a management fee equal to four and one-half percent of gross revenues, payable monthly on the first day of each month, in addition to reimbursement for costs and expenses.

## DISGORGEMENT OF FEES

We believe the bankruptcy court properly exercised its discretion in the employment order to allow American Executive Management to be paid in accordance with its management agreement. Therefore, we think it was an error for the bankruptcy court to order American Executive Management to disgorge its fees simply for failing to comply with 11 U.S.C. §§ 330 and 331. We note, however, that the fees paid to American Executive Management still remain subject to being approved under § 330, and eventually on its own initiative or by a date set by the bankruptcy court, American Executive Management will have to file an application and have its fees allowed. To the extent that, at that time, the bankruptcy court does not allow its fees, the excess would be subject to disgorgement.

## MATERIAL BREACH OF CONTRACT

It is undisputed that American Executive Management failed to obtain a surety bond in an amount no less than $1,000,000, as required by the Management Agreement. The bankruptcy court, however, concluded that the bond would not provide coverage for the money Patel wrongfully withdrew. If the bond would not have provided any coverage, then the failure to provide the bond did not affect or damage the debtors, the estate, or the trustee in any way. Thus, American Executive Management's breach of the Management Agreement was not material.

In addition, section 7.01 of the Management Agreement required American Executive Management to create a special account in which the debtors had no right to draw upon or use. This provision deals primarily with the obligations and rights of

the debtors, not of American Executive Management. However, to the extent this provision of the Management Agreement imposed any obligation on American Executive Management, it complied with the contract by creating an account that the debtors had no right to draw upon or use. The fact that Patel somehow convinced the bank to give him money from the account does not indicate any breach of the contract by American Executive Management.

## BREACH OF FIDUCIARY DUTY

The parties argue much about whether or not American Executive Management was a fiduciary. We need not decide this issue because we conclude that even if American Executive Management was a fiduciary, it did not breach its fiduciary duty for the same reasons we conclude it did not breach its contract. A fiduciary is not a guarantor. The duty imposed on fiduciaries requires them to exercise due care and use the care that an ordinary, prudent person would use under the same circumstances. *See Gearhart Indus., Inc. v. Smith Int'l, Inc*., 741 F.2d 707, 719-720 (5th Cir. 1984); *In re Gaubert*, 149 B.R. 819, 828 (Bankr.E.D.Tex. 1992). American Executive Management complied with the Management Agreement and took ordinary, careful steps regarding the account. It was the bank and Patel who undermined American Executive Management's attempts to prohibit the debtors' access to the account. The fact that Patel wrongfully withdrew the money within the account does not indicate that American Executive Management breached its fiduciary duties.

## CONCLUSION

Because we believe the bankruptcy court erred in ordering the disgorgement of American Executive Management's fees and entering a money judgment for the amount of money withdrawn by Patel, we reverse that part of the bankruptcy court's judgment granting judgment in favor of the plaintiff and against American Executive Management.